E. C. NOYES, Appellant, v. DES MOINES CLUB, Appellee.

**TRIAL:** Verdicts—Directed Verdicts—Rule—Negligence.   A jury
question is presented whenever the evidence is such that reasonable
minds might differ as to whether the evidence establishes the ulti-
mate fact upon which liability rests.   In an action wherein plain-
tiff sought recovery of damages because of having fallen into an
unguarded elevator shaft, *held,* a jury question was presented on
the question (a) of plaintiff's contributory negligence, and (b)
of defendant's negligence.

**NEGLIGENCE:** Acts Constituting Negligence—Unguarded Premises
—Duty of Inviter.   Principle recognized that he who invites
people to come upon his premises must exercise reasonable care to
keep them free from danger.   So recognized as to an unguarded
elevator shaft.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

WEDNESDAY, DECEMBER 13, 1916.

ACTION to recover damages for personal injuries occa-
sioned by falling down an elevator shaft.   Opinion states the
facts.—*Reversed* and *Remanded.*

*E. P. Hudson, R. L. Hudson* and *W. L. Smith,* for appel-
lant.

*Parker, Parrish & Miller* and *C. Woodbridge,* for ap-
pellee.

GAYNOR, J.—Defendant is a corporation, owns, occupies
and controls a certain five-story brick building situated at

the southwest corner of the intersection of the streets known

1. TRIAL: verdict: directed verdict: rule: negligence.

as 8th and Locust Streets, in the city of Des Moines. A portion of the building is occupied by tenants. For its own uses and purposes, it occupies and controls the following: the lobby on the first floor, the passenger elevator leaving said lobby, all the third floor and the fifth floor, the entire basement, and about half of the second floor. Defendant also used and controlled an elevator in the rear part of the building during the month of May, 1914, including May 18, 1914. This was a freight elevator for the use of the defendant in the transportation of merchandise, supplies, etc. This is the elevator in controversy. This elevator is in the southeast corner, and carries freight to each of the floors above. There is a door leading from the alley on the first floor. The alley is on the west end of the building. The wall of Chase & West's building adjoins defendant's building on the south. There are doors leading from this lobby where this elevator is situated, into the rooms occupied by tenants on the east. The elevator is in the southeast corner of this lobby. It is about 25 feet from the door leading from the alley to the door of the elevator. The door from the alley opens into the northwest corner of the lobby. The only natural light that may enter comes through this doorway and windows from the alley. The entrance to the elevator faces to the north.

On the 18th day of May, 1914, the plaintiff was engaged in delivering goods to the defendant in their building aforesaid. These goods had been ordered and directed delivered, by the defendant. Plaintiff entered through the alley door, proceeded towards the east until he reached the elevator in the southeast corner. He was carrying a sack of potatoes weighing about 150 pounds. There was a gate to the elevator, which was supposed to be closed when the elevator was not at a particular floor. As he entered, he attempted to take this elevator to carry the potatoes to one of the upper floors. He claims that the elevator had been removed to one of the

floors above, and the gate was not closed; that he fell into the pit and was injured. It appears that no regular operator was ever used for this elevator; that it had gates or doors on each floor which were supposed to close automatically when the elevator left the floor. The elevator was operated by the user by means of a rope.

Plaintiff brings this action for the injuries received, and as a basis for such recovery alleges: That the defendant was negligent in having said elevator shaft unprotected, and said gate or door open when said elevator was not at the first floor, and in not having an attendant or operator at said elevator, and further, in not having the hall or alleyway about said elevator so lighted that one in entering said alleyway or alley could see whether said elevator was at the first floor or not, that, said gate not being closed, plaintiff supposed the elevator was at the floor; that plaintiff walked into the open pit, fell, and was injured.

At the conclusion of all the testimony, the court, on motion of the defendant, instructed the jury to return a verdict for the defendant. This being done, and judgment having been entered for the defendant on the verdict, plaintiff appeals.

The only question here is whether or not, under the evidence, the court erred in so instructing the jury. Under our system of practice, the jury is the trier of the fact, and, whenever the evidence is such that reasonable minds searching for the truth might differ as to whether the evidence establishes the ultimate fact upon which liability rests, the question is then for the jury. A motion to direct a verdict is in the nature of a demurrer to the evidence. It is not the province of the court to weigh the evidence and sit upon the credibility of the witnesses. Before the court is justified in invading the province of the jury, and determining the facts of the case as well as the law, the case must be such that, conceding to the plaintiff's evidence all the probative force

it is fairly entitled to, it is not sufficient to justify a verdict. We no longer adhere to the scintilla rule. That was repudiated in *Meyer v. Houck,* 85 Iowa 319.

As said in *Phillips v. Phillips,* 93 Iowa 615, 618:

"While the trial court may determine as to whether the contestants had given evidence sufficient to support a verdict, if one should be returned in their favor, it cannot, under the rule announced in *Meyer v. Houck,* pass upon the question as to whether the preponderating weight of all of the evidence is in favor of or against the contestants; that is a question always for the jury. So it is for the jury to determine as to the weight of the evidence, though there be one witness testifying on one side to certain facts, and many witnesses on the other side testifying to a contrary state of facts. It is not the province, in such a case, of the court to pass upon the credibility of the several witnesses, and say which one told the truth, or that the story of one is more likely to be correct than that of another."

To the same effect see *In re Estate of Betts,* 113 Iowa 111. This brings us to a consideration of the evidence as it was before the court at the time the motion was sustained.

The physical facts disclosed by the evidence are that the only outside entrance to this passageway was from the alley on the west side of the building. This alley door is a double door 5 feet wide and 7 feet high, and each door contains four large panes of frosted glass, re-enforced by wire. Over the double door there is a transom 64 inches high and 27 inches wide, made of 8 window lights. The transom consists of two double sashes, similar to two windows, one above the other. In the southwest corner facing on the alley is another window. This is obscured by the stairway immediately east of the window. There is also a window south. This window is also partially obscured by lockers built in the north side of the passageway. Immediately south of this alley was a two-story building. This building stood right across the alley from the entrance to the building referred to. The injury

happened about ten o'clock in the morning. The day was dark and cloudy. The elevator was in the southeast corner. There were no openings on the south, and no openings on the east through which light could enter. The elevator was walled off. The evidence tends to show that the windows referred to were fitted in with dark glazed glass, that did not give light to the elevator for the reason that the door of the elevator faces to the north. Plaintiff testified:

"There is no light in the room near the door, and when you get back into the elevator you turn to the door of the elevator and it faces the wall. There is no light facing the elevator. There was no light in the basement, and the hole was perfectly dark. There were light fixtures in the hallway leading to the elevator. There was no globe in it, and the light was not lit or burning."

There was the evidence of other witnesses that the gate, that was intended to close the mouth of the elevator shaft when the elevator left the floor, would not always descend, and would remain caught up. One witness says it just stayed there, and didn't come down. There was evidence that this gate was not hung level. Another witness testified that there was a gate at the entrance of the elevator; that, when one wanted to enter the elevator, he had to raise up the gate, if it were down; that ordinarily the gate would stay up if the elevator was at the floor, and when the elevator left the floor, would drop down some way; that he didn't see any lights.

Another witness testified:

"The entrance from the alley to the elevator is light close to the alley, and gets dark as you go towards the elevator, and is dark at the elevator;" that the gates are supposed to close when the elevator is taken away. This witness testified that he had made deliveries to the defendant, entering the building through this alley on the west; delivered on the second and third floors; that he knows that 3 or 4 times when the elevator was taken away, the gate did not close.

Another witness testified that he was at the Des Moines Club Building a number of times, about two weeks before the accident; noticed that the gates of the elevator were stuck, and that you would have to help them along to get them down; that the entrance from the alley was always dark; that, when you got to the elevator, it was so dark you couldn't read ordinary writing; that there were never any lights in the elevator nor around it; that the entrance for 15 or 20 or 25 feet around the elevator was dark.

Another witness testified that he was near by when the plaintiff fell; looked into the elevator shaft, but couldn't see him until a light was brought. "There was no light there at the time. There was no light in the elevator shaft." The same witness testified:

"The entrance to the elevator and stairway was dark. The stairway was just west of the elevator, and we had to light a match nearly every time we went there, to see to get down the stairway. Went there at all times of day. About the entrance of the elevator, you could not see to read unless you had a light. You couldn't see to walk, ordinarily. The entrance is light right by the door at the alley, but as you go towards the elevator there is less light, and it gets darker. There is a two-story building just across the alley from the entrance."

He further testified that he had to light a match to get down the stairway into the basement, at the time the plaintiff fell. There is other evidence to the effect that the gates did not shut automatically, as they should, to close the entrance. So much for the conditions that attended the plaintiff's fall.

On the question of his contributory negligence, the record shows that he entered this dark hallway carrying a sack of potatoes weighing 150 pounds. He proceeded along the hallway until he reached the entrance of the elevator. No lights were there. He stopped and looked. The gate was not there. He looked and he thought he saw the elevator.

He looked to see where the gate was. Saw it just above his head. No light was shining up from the basement. He testified that he looked and thought he saw the elevator; that he thought he saw the floor and one side of the elevator; that he looked up and saw the gate above his head; that he assumed the elevator was there, stepped in, and was injured. This is the substance of plaintiff's testimony, except that he had used this elevator several times before.

As to all these facts, except the physical facts, and the conduct of the plaintiff at the time of the injury, there is a sharp conflict in the evidence. It is for the jury to say which of the evidence expressed the truth. The plaintiff is entitled to have the jury pass upon the credibility of his witnesses and the weight to be given to their testimony. If the plaintiff's testimony made out a case for the jury, the fact that defendant's testimony shows a different state of facts does not justify the court in assuming that the defendant's witnesses have correctly expressed the facts, and in disposing of the case upon that theory.

That the defendant had control of this elevator is not questioned, and could not be questioned under this record. It was placed there for the very purpose of use such as was attempted to be made by this plaintiff. These potatoes had been purchased by the defendant, and the plaintiff was directed to deliver them to the defendant. The elevator was placed there for this use, and there was an implied invitation to him to use it. He was within his right in attempting to use it. A duty, then, arose out of this relationship on the part of the defendant to this plaintiff, a duty to use ordinary and reasonable care to see that the elevator was reasonably safe for use, a duty to use ordinary and reasonable care in protecting the elevator shaft when the elevator was removed, and to furnish a reasonable amount of artificial light, in the event the natural light was insufficient to enable persons to use the elevator with safety.

Conceding that sufficient protection was afforded by the

defendant in the original construction of the elevator, and in furnishing lights, yet there was evidence from which the jury might find that the condition existing at the time plaintiff fell had existed for such a length of time prior to the injury that the defendant, by the exercise of reasonable care, could have discovered the conditions of peril and remedied the defects that caused the peril, before the happening of the injury. The jury could well have found that the elevator was placed for the particular use to which the plaintiff was then about to devote it; that it was placed there by the defendant for that purpose; and out of this arose an invitation to use it for the purpose. Therefore, a duty arose on the part of the defendant to this plaintiff.

Negligence always rests upon some duty which the party charged owes to the injured person. One who has control of a building has a duty to those who come upon the premises by invitation, express or implied. He violates that duty when he negligently allows conditions to exist, the existence of which imperil the safety of those who so come upon his premises. Under the facts and circumstances of this case, the defendant cannot be holden to that high liability which attaches to common carriers of passengers for hire, but it should be holden to the exercise of reasonable care to see that the premises, to the use of which it extends an invitation to others, are reasonably safe for the use of those who accept, and come upon the premises.

2. NEGLIGENCE: acts constituting negligence: unguarded premises: duty of inviter.

We think there was sufficient evidence to carry this case to the jury as the record now stands, and the court erred in taking the case from the jury.

We think this case is governed by the rules laid down in *Burner v. Higman & Skinner Co.*, 127 Iowa 580. For this reason, the case is *Reversed* and *Remanded.*

EVANS, C. J., LADD and SALINGER, JJ., concur.