MRS. CHARLES OSBORN, Appellee, v. KLABER BROS., doing business as TRU-VALUE SHOP, Appellants.

No. 44752.

AUGUST 1, 1939.

REHEARING DENIED NOVEMBER 17, 1939.

Helsell, Burnquist & Bradshaw and James I. Dolliver, for appellee.

Price, Rider & Keefe, for appellants.

RICHARDS, J.—On June 25, 1937, the defendants were engaged in the retailing of women's apparel in Ft. Dodge. Their place of business, a store room of moderate size, was equipped with wall cases in which the merchandise was kept on display. These cases, being against the walls, occupied only a small portion of the floor space. The remainder of the floor of the room, between the wall cases on either side, was open space unobstructed in any way. The floor covering was a commonly used manufactured product known as Tile-tex, laid in alternate light and dark colored squares, making, in the words of the witnesses, a perfectly smooth surface. Defendants' continuous practice, following the laying of the Tile-tex in November 1936, had been to keep the floor surface polished by using liquid wax. The Tile-tex not being absorptive, applications of wax were made occasionally as through use of the floor the wax was worn away. During the afternoon of June 25, 1937, plaintiff entered the place to look for a dress. After walking lengthwise of the room a distance of about 20 feet she fell in a sitting position and sustained physical injuries. The place where she fell was approximately midway between the wall cases. The floor space there was open and unobstructed by any object. She brought

this action to recover damages, claiming that her injuries were wholly the result of the negligence of the defendants. Upon the trial a verdict was returned in favor of plaintiff. From a judgment rendered thereon defendants have appealed.

In the instructions the trial court submitted to the jury only one of plaintiff's specifications of negligence, to wit, that defendants were negligent in causing the floor, at the place where plaintiff claimed to have fallen, to be coated with an excessive amount of wax, causing the floor to be unusually and extraordinarily slippery and dangerous. In the trial court defendants offered the objection that the evidence was insufficient to warrant the submitting of this specification of negligence. In this court it is one of defendants' contentions that in refusing to sustain the objection the trial court erred.

It appearing that plaintiff was defendants' invitee to the premises, it was defendants' duty to be reasonably sure that they were not inviting plaintiff into a place of danger, and to that end defendants were required to exercise ordinary care and prudence to make the premises reasonably safe for the visit. Upp v. Darner, 150 Iowa 403, 130 N. W. 409, 32 L. R. A., N. S., 743, Ann. Cas. 1912D, 574. The inviter is not held to that high liability that attaches to common carriers of passengers for hire, but should be holden to the exercise of reasonable care to see that the premises are reasonably safe for the use of invitees who come thereon. Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 231 N. W. 665. The waxing resulted in defendants' floor having a polished surface. In accord with the trend of authority we have held that this type of floor, in such general use, is not inherently a hazard to the safety of invitees, within the standard of care required. Nelson v. Smeltzer, 221 Iowa 972, 265 N. W. 924. That she has avoided the force of this holding is urged by plaintiff. Her argument is that she has shown that in the instant case there was more than the slipperiness or slickness of surface that commonly characterizes polished floors. More specifically, plaintiff's claim is that in the evidence there is a showing that defendants caused the floor to be coated at one place with an excessive amount of wax; that the excess of wax caused the floor to be unusually and extraordinarily slippery and dangerous at that place; that there plaintiff fell. Whether there was the alleged showing depends on the suffi-

ciency in that respect of the evidence, to the relative portions of which we now turn.

Plaintiff testified that the floor was perfectly smooth; that there were no uneven places, no up and down ridges or depressions or variations or fills; that it was "just a slick floor"; that there were no humps in the floor; that there were no obstructions or anything on which she could stub her toe. She said: "I didn't do that. I just slipped. My foot went out from under me like that and I went down." She stated her fall was due solely to slipping "on that smooth floor." But that on which her counsel more especially rely is plaintiff's testimony concerning observations she stated she made of the place where she fell, while she was sitting there and after she had been assisted to a chair. What she claims to have observed she related rather indefinitely. Her clearest expression appears to be the following:

"Underneath the polish there was a—you have seen where they have smeared soap or something. It leaves a kind of ridge or smeared place. The polish was on top of that so that it looked very shiny. I am sure the stuff on the floor was wax. This floor [the floor in the trial court room] is smooth compared to what that was and doesn't have that shiny variation that that had. * * * I wish the jury to understand that it was a level smooth floor, but slippery and slick; * * *."

The wax that had been used on defendants' floor was of the type known as liquid or water wax. It contains shellac, a small portion of wax, and soap and water, but no oils or greases as do paste waxes. Being a thin liquid it readily spreads and smooths itself out and dries into a glossy finish without rubbing or polishing. Its application to a floor can be made with a cloth or like substance that has been moistened with the liquid. Defendants' employee had waxed the floor on June 22, 1937, three days prior to plaintiff's injury. This employee testified that the floor was coated evenly, as it had been on many prior occasions.

There was testimony that liquid wax, after being applied, may have a cloudy or bluish appearance while it is drying, this vanishing however when the wax dries and becomes transparent. The smeared appearance plaintiff claims she observed can-

not be accounted for as having been the cloudiness or bluishness of wax that was still wet, for the record establishes beyond doubt that there had been a complete drying of the wax prior to the accident. In what other manner an excessive amount of wax would be causative or explanatory of the alleged smeared appearance is not suggested by anything found in the record. The testimony shows that foreign substances brought in on the shoes of customers worked into the floor, making necessary a scrubbing each time before the applying of the wax. The floor had been in constant use for 7 months. It would not be improbable that, if plaintiff observed anything, it was some appearance the surface of the Tile-tex itself had acquired, for it is plaintiff's testimony that the wax was on top of whatever it was she saw. Plaintiff offered five other witnesses, among them her husband, who observed the place where plaintiff fell soon after the accident. None of them claimed they observed any difference in the appearance of the floor where plaintiff fell, although they did testify with respect to the slippery and slick surface the floor presented. The testimony of these witnesses affords nothing that associates the alleged smeary appearance with an excessive application of wax. While she was making the observations to which she testified plaintiff was suffering pain and feeling "pretty sick", her fall having fractured the left hip. Though it was a most regrettable accident, it appears to us that the evidence was so inadequate, that the question whether defendants caused the floor to be excessively waxed should not have been submitted. Under the record an answer to this question would be so conjectural that it would be outside a jury's proper functioning to pursue the query. There is a question raised whether plaintiff's second fact proposition was, in view of the record, a question for the jury. Reference is to the alleged fact that excessive waxing, if there was such excessiveness, caused the floor to be unusually and extraordinarily slippery and dangerous at the place where plaintiff fell. But decision of this and other questions raised in a number of assignments of error, does not appear needful. For the reasons that have been set out we are constrained to hold that the evidence was insufficient to warrant the submitting of the specification of negligence that was contained in the afore-mentioned

instruction. It follows that the judgment must be and it is reversed.—Reversed.

MILLER, SAGER, HAMILTON, and HALE, JJ., concur.

OLIVER, C. J., and BLISS, J., dissent.