LOURANIA SMITH and LYMAN G. SMITH, appellees, v. CEDAR RAPIDS COUNTRY CLUB, appellant.

No. 50744.

(Reported in 124 N.W.2d 557)

1200

NOVEMBER 12, 1963.

REHEARING DENIED JANUARY 14, 1964.

John D. Randall, of Cedar Rapids, for appellant.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, of Cedar Rapids, for appellees.

LARSON, J.—This is an action for personal injuries suffered by plaintiff, Lourania Smith, sustained while attending a luncheon at the defendant Cedar Rapids Country Club on May 7,

1959. The petition alleged that the plaintiff was not a member of and had never been in the Cedar Rapids Country Club prior to the date of injury; that she attended and paid the sum of $2.00 for the luncheon as a member of the Cedar Rapids Women's Club; that she was directed to the ballroom on a floor which had been prepared as a dance floor, with a particularly hard and slippery surface, improper and dangerous for its use at that time. The petition further alleged that the wax or waxes used thereon were improperly applied and also that the same were not spread evenly and uniformly, but were slippery in some spots and not in others; that she was not warned of the slippery condition of the floor; that she stepped on an unusually and particularly slippery spot and fell, breaking her hip.

Defendant's answer denied the allegations of negligence and, as a matter of affirmative defense, denied that the plaintiff was an invitee, and alleged that the plaintiff assumed the risk of the condition of the floor of the ballroom.

The trial court submitted the case to the jury and advised it that the plaintiff was an invitee and declined to submit to the jury the defendant's contention that the plaintiff had assumed the risk.

The specifications of negligence alleged by plaintiff and submitted by the court were:

"1. In using, upon a wooden floor where plaintiff Lourania Smith was permitted to go, waxes resulting in a particularly hard and slippery surface, improper and dangerous for the use to which the floor was being used at the time Mrs. Smith was permitted to go thereon.

"2. In improperly applying to and maintaining on the floor a wax or waxes with the result that the same were not spread evenly and uniformly on the floor but spread or maintained in such a way as to be extremely slippery in spots and not in others.

"3. In not warning the guests, including Mrs. Smith, of the slippery condition of the floor."

The court also told the jury: "Mrs. Smith further alleges that she was herself free from contributory negligence."

There is no issue as to contributory negligence presented in this appeal.

The jury returned a verdict for Mrs. Smith but not for her husband, and from a judgment accordingly defendant appeals. Mrs. Smith will hereinafter be referred to as plaintiff.

Defendant assigns ten errors, but regroups them into six in its reply argument. Basically, they may be reduced to three principal contentions, and for the sake of brevity we will consider them as follows: (1) The court erred in holding plaintiff was an invitee at the time of her injury and in so instructing the jury; (2) there was no relevant, competent and substantial evidence of defendant's failure to perform its duty to plaintiff; and (3) there was sufficient improper conduct of plaintiff's counsel to require the court to grant defendant's motions for a mistrial or a new trial in these proceedings.

I. The general definition of an invitee is that he is one who goes to a place of business either by express or implied invitation of the owner or occupant on business of mutual interest to both or in connection with the business of the owner. Holmes v. Gross, 250 Iowa 238, 248, 93 N.W.2d 714, and cases cited. Therein we recognized and approved a statement of the responsibility of an owner in LaSell v. Tri-States Theatre Corp., 233 Iowa 929, at 946, 11 N.W.2d 36, at 45, as follows: "It is a general rule, recognized without dissent, that an owner or occupant of buildings or premises, who directly or impliedly invites or induces others to enter therein, owes an active, affirmative duty to such persons to use reasonable, ordinary care to keep such premises in a reasonably safe condition, so as not to unreasonably or unnecessarily expose them to danger."

To determine plaintiff's status, and thereby the duty owed her by defendant, a brief statement of the undisputed facts should be made. The defendant is a private country club in Cedar Rapids, Iowa, maintaining a clubhouse in which there is a ballroom used both for dining and dancing. While the club's facilities are for members and guests, on occasion certain facilities and services are offered to and used by other groups and members of the general public for such purposes as college

dances, wedding receptions, and other club luncheons. In this case the group was the Cedar Rapids Women's Club. As a member of that group, the plaintiff attended a brunch in the ballroom of the defendant-club, which was served pursuant to an arrangement between a committee of the Women's Club and the defendant's manager whereby the Country Club was to charge $2.00 per person, and actually received $424 for serving this brunch to those present on that occasion. Plaintiff paid for her ticket at the time she entered the ballroom on the morning of May 7, 1959. She was then directed into the ballroom where tables were already set up for the luncheon. There can be no doubt under these facts that she was then an invitee or, in other words, she was a business visitor. In Restatement of the Law, Torts, chapter 13, section 332, it is stated: "A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

There is no evidence to sustain appellant's contention that she was merely a gratuitous licensee, which is defined in the Restatement, section 331, as "A gratuitous licensee is any licensee other than a business visitor as defined in §332." In Comment (a) thereunder it is stated: "The phrase 'gratuitous licensee' includes three types of persons. 1. A licensee whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom. 2. The members of the possessor's household, except boarders or paying guests and servants, who, as stated in §332, Comments f and g, are business visitors. * * * 3. Social guests who, in a sense, are persons temporarily adopted into the possessor's family."

On the other hand, under Comment a, section 332, it is stated: "Business visitors fall into two classes. The first class includes persons who are invited or permitted to come upon the land for a purpose directly or indirectly connected with the business which the possessor conducts thereon, * * *. The second class includes those who come upon the land for a purpose which is connected with their own business which itself is di-

rectly or indirectly connected with any purpose, business or otherwise, for which the possessor uses the land. * * *. b. In determining whether a particular person is a business visitor of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. * * * The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public or *classes or members thereof* a willingness or unwillingness to receive them." (Emphasis supplied.)

In the Law of Torts, Hornbook Series, Second Ed., by Prosser, it is stated on page 452, chapter 15, section 78:

"An invitee is a person who is invited or permitted to enter or remain on land for a purpose of the occupier. Some courts require that the business upon which he comes be pecuniary in its nature, or of some economic benefit to the possessor; others require only that it be such that there is an implied representation that care has been exercised to make the land safe for the visitor.

"The possessor is required to exercise reasonable care to warn the invitee, or to make the premises safe for him, as to dangerous conditions or activities of which the possessor knows, or those which he could discover with reasonable care. The obligation exists only while the visitor is upon the part of the premises to which his invitation extends."

Also see Harper on Torts, pages 225, 226, section 97, and on the limitation of the invitation, see Steinberg v. Irwin Operating Co. (Fla. 1956), 90 So.2d 460, 58 A. L. R.2d 1198.

The trial court instructed the jury that "Under the undisputed evidence * * * the plaintiff * * * was an invitee on the premises of the defendant at the time of her injury on May 7, 1959" and that "The owner of a building who directly or by implication invites or induces others to enter upon his premises owes to such persons a duty to have his premises in a reasonably safe condition and to give warning of latent or concealed perils."

The evidence is undisputed that, as plaintiff was directly proceeding toward the tables set up by defendant for the lunch-

eon, she suddenly fell and received serious and permanent injuries.

It matters not that the arrangements for this luncheon were made by her club's committee or that they requested the ballroom for the meal. Plaintiff was a member of a group or class invited or permitted to use those facilities for this brunch. Furthermore, that defendant had a business interest therein cannot be doubted. Since plaintiff did not stray from the facilities included in the invitation, she was as a matter of law an invitee of defendant at the time and place of her fall.

Defendant cites one case it believes is authority for the proposition that in serving the Women's Club it had no right to exclude anyone invited by that club, and the persons served were not its invitees or business guests. Amey v. Winchester, 68 N. H. 447, 39 A. 487, 39 L. R. A. 760, 73 Am. St. Rep. 614. That case involved a stolen hat, not a personal injury, and its views are not in accord with the more recent concept of a business visitor or invitee. See Steinberg v. Irwin Operating Co. (Fla. 1956), supra, 90 So.2d 460, 58 A. L. R.2d 1198, and City of Boca Raton v. Mattef (Fla.), 91 So.2d 644. Where both parties are benefited by the relationship the responsibility for due care owed an invitee arises. See annotation, 58 A. L. R.2d 1203, section 2, and cases cited.

II. The duty and responsibility of an owner of a place, or a possessor of property, in regard to the condition thereof as it pertains to invitees, has been before this court many times and the law thereon is well settled in this jurisdiction. Vollmar v. J. C. Penney Co., 251 Iowa 1026, 1028, 103 N.W.2d 715, and cases cited. While a possessor of real estate is not an insurer of invitees who come upon his property, and while the mere fact that an accident happens thereon does not create liability, the owner or occupant does have a duty to use reasonable care to keep the property in a reasonably safe condition for the contemplated use. See Shreve v. Edmundson Art Foundation, Inc., 243 Iowa 237, 50 N.W.2d 26, another case cited by appellant. We have said this duty applies only to defects or conditions which are in the nature of dangers, traps, snares, pitfalls and the like, which are not obvious or known to the invitee, but

which are or in the exercise of due care should be known to the possessor; that it is predicated upon a superior knowledge of the possessor. Chenoweth v. Flynn, 251 Iowa 11, 15, 99 N.W.2d 310, 312; Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140; Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858; Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252; 65 C. J. S., Negligence, sections 45b and 50; 38 Am. Jur., Negligence, section 131.

Here, then, plaintiff's burden was to prove by a preponderance of the evidence the existence of a hidden defect in the condition of the ballroom floor being used as a dining hall at this time, and a knowledge of its condition, actual or imputed, upon the part of the defendant. Defendant denied the defect or any unsafe condition of the floor at that time.

The question presented under this division, then, is whether the issue of defendant's negligence was for the jury. The rule is clear that if from the evidence reasonable minds might reach different conclusions upon this issue, it was properly for the jury. Rule 344(f), paragraph 17, and paragraph 2, R. C. P.

Of course, in this appeal we must consider the evidence in the light most favorable to plaintiff and give her the benefit of all permissible inferences.

III. Substantial evidence of the following appears: Plaintiff is a married lady, over 71 years of age, and a little overweight. She drove her car to the Country Club, with several other members of the Women's Club, about 10:30 on the morning of May 7, 1959, to attend this luncheon. She, with the others, walked up the carpeted inside stairs to a lounge outside the ballroom. After purchasing her ticket, she followed other ladies into the ballroom where some were already seated at long tables nearly covering the ballroom floor. As she proceeded toward the tables, taking 7 or 8 steps, she testified that she stepped upon a very slippery spot, her feet flew out from under her, and she "came down in a heap." She was wearing a pair of "old ladies' shoes" with flat heels and, until she reached that spot, had noticed no slippery condition of the floor, although she did notice that it was a hardwood floor which had a waxed appearance. She said it was like most waxed floors she had

walked on until she reached this particular spot, which was very slippery. After her fall she was helped into a chair and was pushed up to the table where she sat through the luncheon and entertainment. When she tried to arise she could not do so, and the Country Club manager, Mr. Ray B. Cary, called an ambulance. She was taken to a hospital where it was discovered that she had sustained a fracture of the right hip. After two operations and many weeks in hospitals, she still is a permanent cripple unable to take care of herself or do her housework. There is no issue as to the seriousness of her injury.

Further testimony on the slipperiness of this floor appears. Mrs. Marie Oleson, plaintiff's witness who also attended the luncheon, testified the area where plaintiff fell was "dance-floor slippery", and Mrs. Helen Crew testified that particular area was so slippery she walked over it like she was "walking on eggs." She testified when she went onto the floor it did not seem slippery, but thereafter it became so slippery she took hold of a chair once or twice to keep from falling.

■ ■ Although it is true defendant's witnesses, including the manager, the maintenance man, and the waitresses called, testified that the floor was not slippery in that area, it must be concluded there was a jury question as to that issue. Under our system of practice, the jury is the trier of the fact, and, whenever the evidence is such that reasonable minds searching for the truth might differ as to whether the evidence establishes the ultimate fact upon which liability rests, the question is then for the jury. Noyes v. Des Moines Club, 178 Iowa 815, 817, 160 N.W. 215. We cannot say here that, conceding to the plaintiff's evidence all the probative force to which it is fairly entitled, it is not sufficient to justify a finding that there was a very slippery spot or area on this floor where plaintiff stepped and fell as she proceeded to a seat at a table prepared for her by defendant's employees.

■ IV. Was the evidence of improper maintenance sufficient to sustain a finding that defendant knew or should have known of the unsafe condition of this floor for the purpose for which it was being used on this May 7 morning? The testimony,

fairly considered, revealed that defendant possessed that knowledge. This ballroom had been used for some 40 or 50 dances a year, and had been used for two dinner dances within a period of two weeks. In addition to the regular floor wax used as a floor preservative, on occasions when members requested it a dance floor wax was applied to make the floor slippery enough to dance upon. Mr. Cary himself testified: "We had a member dance on April 25, 1959, and it would be possible that I used this wax on that occasion." In addition, defendant's expert witness, a vice-president of the J. I. Holcomb Manufacturing Company, testified that in his opinion it must be assumed that dance floor wax had been applied to make the floor, previously treated with their wax, slippery enough to dance upon.

While considerable evidence was introduced by persons who had experience and knowledge as to the slickness of floors waxed with Holcomb's Waterproof Wax and dance wax, and many of the more than one thousand pages of the record and the arguments relate to the relevance and materiality of that testimony, we are convinced, as was the trial court, that the evidence of the application of additional dance floor wax was sufficient to sustain a jury finding of fact that defendant knew of the actual condition of the floor at that time. It could find that either Mr. Cary or the janitor applied dance wax on April 25, 1959, when the Country Club held its dinner dance, that no proper method to remove this wax so as to make the floor safe for restaurant purposes was taken by the defendant subsequent to that dance, and that it remained in the same condition as at the time of the dances on April 25 and May 1.

It appeared without contradiction that the method used by defendant to clean the floor after a meal or a dance was the use of a dry or treated mop, and that no wet mop was used to slow up the floor after an application of dance wax. While there was some conflict in the testimony by the experts as to proper application of the original wax to such a floor, there is no conflict in their opinions that dance floor wax will make a floor quite slippery, and unless it is cut with some antiskid materials, the floor would be hazardous to walk upon until properly cleaned.

There was also substantial evidence the dance wax was not

spread around the entrance or sides of the room, but that it was used in the middle of the floor where the dancing was done. It also appeared that the general slipperiness on a dance floor is dulled by people walking on it and scuffing it up with sand and other debris on their shoes, and that in the area where it has not been removed by a wet-mop application, slipperiness will remain indefinitely. Fairly considered, this evidence was sufficient to sustain a finding of fact that defendant failed to properly clean the floor for the purpose it was to be used on May 7, 1959. Of course, as we shall point out later, the rule is well settled that proof of knowledge or notice of an alleged dangerous condition is not required where it was created by the defendant.

V. Defendant complains of the acceptance of testimony of plaintiff's expert witnesses Van Horn, Oleson, Cook, Walker, Schneider and Higley, who testified as to the slipperiness of floors upon which Holcomb's Waterproof Wax was used and the general qualities of that wax. We shall not attempt to review all this testimony, but we are satisfied it was admissible. Each witness had long experience with care of waxed floors and the safe practices in wax application thereon. It would unduly lengthen this opinion to set forth their qualifications and testimony. One of the tests for the admission of an expert opinion is whether the subject matter is such, and the witness is so qualified, as to aid the jury in the proper determination of a question before it. Courts and other authorities uniformly agree that the receipt of opinion evidence, whether lay or expert, and the extent to which it will be received in any particular case, are matters resting largely in the administrative discretion of the court. Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646; Ruth v. O'Neill, 245 Iowa 1158, 66 N.W.2d 44; 20 Am. Jur., Evidence, sections 783, 784; 32 C. J. S., Evidence, page 86, section 449; 1 Wigmore on Evidence, Second Ed., page 1092, section 682. Appellate courts should be and are very reluctant to interfere with such discretion unless it has been manifestly abused to the prejudice of the complaining party. Then too, it is not the province of the court in such a case to pass upon the credibility of the several witnesses and say one opinion is more likely to be correct than another. The

jury is to determine the weight to be given this evidence. Noyes v. Des Moines Club, supra, 178 Iowa 815, 818, 160 N.W. 215.

Here the evidence as to the proper application and slipperiness of Holcomb's Waterproof Wax used in protecting floors open to the public was given by those familiar with this wax, although few, if any, had used it on wood floors sealed and prepared as defendant's ballroom floor. For the help the jury might gain because of the familiarity of these witnesses with the qualities of waxes used on the floor, it must be clear there was no manifest abuse of the court's discretion in admitting such evidence.

Defendant relies heavily upon the cases of Shreve v. Edmundson Art Foundation, Inc., supra, 243 Iowa 237, 50 N.W.2d 26, and Osborn v. Klaber Bros., 227 Iowa 105, 287 N.W. 252, but neither of these cases is factually similar to the case at bar. In each case the invitee claimed to have fallen due to the improper application of wax to the floors, causing slicker spots to appear. There were two dissents in the Osborn case. However, in both cases it was correctly held the proprietor's duty to exercise reasonable care to see that the premises are reasonably safe for the use of invitees is not breached by the mere showing that a polished surface resulted from waxing, and that it is not inherently a hazard to the safety of invitees within the standard of care required. It was also held in each case that plaintiff's showing of unusual conditions connected therewith was insufficient. There was nothing to show the application or care of the floor resulted in unevenness of the surface in the Shreve case, such as we have in the case at bar where evidence appears of improper cleaning. This itself would tend to produce a latent or concealed defect which the defendant, as caretaker of the floor, knew, but the invitee did not know.

We conclude the assigned errors based upon the admission of the testimony of these experts are without merit.

VI. Defendant's witnesses admitted that when this floor had been cleaned with a detergent and power scrub brush about April 1, 1959, the new application of Holcomb's wax was by one thin coat, although the directions on the can recommended two

thin coats. While it may be doubtful such a departure had much to do with the condition of this floor on May 7, 1959, the testimony is undisputed that uncut dance wax applied to that floor would make it suitable for dancing but not for dining purposes. Plaintiff's evidence tends to sustain its contention that the method used by defendant in cleaning dance floor wax from its floor to slow it down to a safe condition for walking was insufficient, in that it did not include the use of a wet mop. She contends the evidence was conclusive that when a dry mop became loaded, it would then spread the wax, and that it would not remove ground-in wax, leaving spots or areas where the floor would remain very slick. She maintains that the evidence and the permissible inferences fully sustain her contention that that is what occurred. We must agree.

Defendant contends that its cleaning method with a dry or treated mop was sufficient, but admits the floor was in the same condition as it was on April 25 and May 1 except for such cleaning. From these facts we believe the jury could reasonably conclude the floor was improperly prepared for the use made of it on this May 7 morning. Even defendant's expert, Louis D. Bryant, stated that a dry-mop cleaning was insufficient, for then "you would have part of it that was slowed down and a part which would be slippery." Defendant, of course, was charged with the knowledge of this condition when it permitted these ladies to go upon the floor.

It is true there could be no recovery here unless there was something on the floor that in the exercise of due care should not have been there, and that negligence is not proved by an isolated occurrence. It must be predicated on what should have been anticipated. Shreve v. Edmundson Art Foundation, Inc., supra. There was no showing anyone else had fallen on the floor maintained in this manner, but the evidence is very clear that the method used to change this floor from one suitable for dancing to one suitable for dining purposes left something to be desired. This was the first time plaintiff had been on that floor and, being unaware of the dual use thereof or the fact that some spots might be left very slippery under the method of cleaning used by the defendant, she was entitled to a warning in order

that she might exercise more than ordinary caution for her own safety. None was given.

VII. Before considering defendant's contention of misconduct during the trial, we shall briefly consider the errors assigned for failure to give requested instructions and in giving certain instructions to the jury.

 Appellant assigned as error the giving of Instructions 5 and 7 and the refusal to give Requested Instructions 2 and 3. The complaint appears to be that the court refused to submit to the jury the doctrine of assumption of risk, and advised the jury instead that under the uncontroverted evidence the plaintiff was an invitee upon the premises. From what we have already said we find no merit in these contentions. Each visiting member of the Women's Club was an invitee in her own right, and nothing done by the committee in choosing the ballroom at the Country Club as a suitable place to hold the brunch, or its observation as to the condition of the floor, would amount to an assumption of the risk of defendant's negligence in the proper preparation, care and maintenance of the floor when the luncheon was served. The business relationship in such cases is personal, and that doctrine is not ordinarily applicable in such cases. As bearing on this question see Bohnsack v. Driftmier, 243 Iowa 383, 390, 392, 52 N.W.2d 79, and cases cited. In Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1261, 30 N.W.2d 97, 102, this court said: "The doctrine of assumed risk applies where a plaintiff has actual knowledge of a danger * * * appreciates the risk arising therefrom, and voluntarily exposes himself to it." (Citations) Also see Stingley v. Crawford, 219 Iowa 509, 512, 258 N.W. 316, 318, which states: "The material point is that, before the doctrine of assumption of risk can apply, the plaintiff must have known of the danger." Here there is no evidence Mrs. Smith ever saw the floor of this ballroom before she set foot upon it, and as she and the others attended this brunch as paying members of a class or group, through an invitation extended them by the defendant-club through their Women's Club, the invitation was to each individual as such. Knowledge of the committee as to the condition of the floor when they viewed it, even if it were established that they knew

it was slippery then, which does not appear, would hardly be an imputed notice to each Women's Club member of its condition when she arrived. No such qualified invitation was implied, and we find no error in this assignment. We are also satisfied no overemphasis was placed on the plaintiff's status in Instruction 7.

In Assigned Error No. 8 defendant complains because the court submitted to the jury any question as to the improper application of wax to this floor. We considered this contention in Division IV hereof, and it would unduly lengthen this opinion to discuss it further. There was substantial evidence of the departure from the directions as to the application of Holcomb's Waterproof Wax, evidence that uncut dance wax was applied on this very hard surface and that the only way to remove the resulting condition of slipperiness was to wet-mop the floor after that application.

In Assigned Error No. 9 defendant complains of the admission of Holcomb's salesman Walker's testimony, contending all he knew as disclosed in voir dire was what he read in the sales literature and that his testimony as to the contents or qualities of this wax was merely hearsay. Again we find no error for, as already pointed out herein, the question as to whether a witness is sufficiently qualified to express an opinion is left largely to the discretion of the trial court. Mr. Walker testified in a prior trial as to these qualities, was an employee of the Holcomb Company, and to a certain extent was a hostile witness toward plaintiff. His position, experience and study were such that he would be qualified to draw proper inferences from the facts available to him and, as pointed out by appellee, the lack of strong qualifications would affect the weight rather than the admissibility of the evidence. As bearing thereon see Nicholson v. City of Des Moines, 246 Iowa 318, 67 N.W.2d 533; 32 C. J. S., Evidence, section 455, page 94.

In Assigned Error No. 5 the appellant complains of the admission of testimony of several users of floor wax and contends they do not qualify as experts. As we have already pointed out, whether the witness is sufficiently qualified to express an opinion in the matter at hand is largely in the discre-

tion of the trial court. Grismore v. Consolidated Products Co., supra, 232 Iowa 328, 5 N.W.2d 646; Ruth v. O'Neill, supra, 245 Iowa 1158, 66 N.W.2d 44; 20 Am. Jur., Evidence, sections 783 and 784.

We have also considered Assigned Errors Nos. 6 and 7 and have discussed the propositions elsewhere in this opinion, finding them without merit.

Appellant further assigns error in the giving of Court Instruction 9 and in denying defendant's Requested Instruction 4. It is difficult to determine the exact complaint as to the court's instruction, for in substance both instructions relate to the duty to warn guests or invitees of the slippery condition which plaintiff alleges existed at the time. Basically, it appears defendant contends "there was and could have been no knowledge on the part of the defendant of any condition for which there should have been a warning." As has been hereinbefore stated, it is the duty of the owner or occupier of a building to give to invitees adequate and timely notice and warning of any latent or concealed perils which were known to the owner, *or that he caused or created*, or which in the exercise of reasonable care he should have known. LaSell v. Tri-States Theatre Corp., supra, 233 Iowa 929, 11 N.W.2d 36; Wood v. Tri-States Theater Corp., 237 Iowa 799, 23 N.W.2d 843; 65 C. J. S., Negligence, section 45, page 526, and section 208, page 968; 38 Am. Jur., Negligence, page 762, section 102; Annotation, 63 A. L. R.2d 596, section 2, and page 620, section 7. If the condition has been created by the owner or occupant, most courts, including Iowa, hold he will not be heard to deny he had notice of it. Here we are convinced the evidence was substantial that defendant, through its employees, was aware of the floor condition on that occasion, or in the exercise of reasonable care should have known of it. Cases cited in support of defendant's proposition of Vollmar v. J. C. Penney Co., supra, 251 Iowa 1026, 103 N.W.2d 715, and Schafer v. Hotel Martin Co., 249 Iowa 866, 89 N.W.2d 373, are quite different factually. In each of those cases a dangerous situation existed which clearly was not within the actual or imputed knowledge of the owner. Neither had been created nor caused by his act. In the case at bar, as we have pointed out, there is

1216

substantial evidence of the owner's improper application of the waxes to this ballroom floor and of its practice of cleaning and wax removal.

Needless to say, this case was hard fought and there was much repetition in the arguments due to the various ways the alleged errors were raised. We have tried to consider each and every one fully and have come to the conclusion that under this record no prejudicial errors appear and that the issues were properly submitted to the jury.

 VIII. In Division VIII of his brief and argument defendant contends the court erred in overruling his motion for a mistrial "for the reason that the misconduct in the final argument was such as to prevent the defendant from having its day in court." Counsel first complains of statements made in opening arguments during the trial, and ends up with a charge that plaintiff's final argument went beyond the record and was prejudicial to him when his objection was ignored. Again we find no substantial departure from proper courtroom procedure and note the learned trial court was present during the entire proceedings. Many things occur during the heat of battle which may appear to be improper insinuations or practices, but do not amount to sufficient prejudice to require a reversal.

Here in final argument defendant's counsel commented upon the failure of plaintiff to call more than two of the 206 ladies who attended the luncheon that day. He said, according to affidavits filed herein, "that either plaintiff's counsel in his closing argument had the duty to advise the jury why he had not called Mrs. Busenbark [the lady who walked in with plaintiff] or that possibly counsel in his closing argument could give the jury some reason why she had not been called." Apparently Mr. Elderkin considered this remark a direct challenge to tell the jury why she had not been called and, since he was "reliably informed" defendant's counsel knew she was incapacitated and had been for some time, he accepted the challenge and told the jury she was in bed and could not testify. Defendant's counsel admits he stated in argument "it was strange that she [Mrs. Busenbark] had not been called to testify", in view of the fact

that she would be "the very best witness as to the condition of the floor where Mrs. Smith fell." The trial court, in refusing to certify defendant's bill of exceptions, said he well remembered what counsel had said to the jury in that regard and stated: "I thought at the time that you were leading with your chin, and it would undoubtedly not be passed by by the plaintiffs in their closing argument."

The court agreed with the statements in plaintiff's affidavits and considered defendant's counsel's argument a dare to make an explanation as to why she was not there. It concluded this exchange did not have any prejudicial effect whatsoever, and stated if it was error to permit the answer given, it was error without prejudice. It further concluded there was no misconduct. We agree with the trial court and also feel this exchange involved neither bad faith nor misconduct. While it is true one may comment in argument upon the failure of the opposing party to produce material evidence within its control (Johnson v. Kinney, 232 Iowa 1016, 7 N.W.2d 188, 144 A. L. R. 997), care must be exercised not to invite legally restricted explanations, and, while only matters within the record may be referred to in closing arguments, we fail to see that the answer to defendant's counsel's question had any prejudicial or injurious effect, except in the embarrassment it may have caused in failing to have plaintiff's counsel admonished. It had no direct relationship to any vital issue in the case.

We may say in this regard that courts do not consider proper any departure from the letter or the spirit of the law in the trial of lawsuits, and abhor attempts to impeach witnesses by insinuations or slurs. Jettre v. Healy, 245 Iowa 294, 60 N.W.2d 541. Nevertheless, the conduct of the trial itself is left largely to the discretion of the trial court who is best able to determine whether counsel attempts to gain advantage by unfair tactics. We are slow to interfere with this discretion, and only in cases of clear abuse will we do so. Here none of defendant's complaints as to misconduct was considered of much real importance by the trial court. In view of this hotly contested trial, there is little wonder that counsel on both sides feel aggrieved at the court's patience with the other side.

We have carefully considered the listed offenses, including the use of a blackboard to set out the issues, the cross-examination of witnesses, and the references to the number of acres owned by defendant, Country Club, and find in them insufficient grounds to justify the awarding of another new trial herein. The matter has already been tried twice.

Having concluded there were no prejudicial errors disclosed in defendant's bill of exceptions, and that the court did not err in denying defendant's motion for a directed verdict, judgment notwithstanding the verdict, and for a new trial, the judgment for plaintiff in the sum of $23,475, being well within the damages alleged and the evidence produced, must be affirmed.—Affirmed.

All JUSTICES concur.