ELIZABETH CORRIGAN, appellant, v. YOUNKER BROTHERS, INC., a corporation, appellee.

## No. 50191.

(Reported in 110 N.W.2d 246)

AUGUST 15, 1961.

Deck & Johansen, of Sioux City, for appellant.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellee.

THOMPSON, J.—The plaintiff is a widow, living in Sioux City. On April 29, 1958, she was injured by a fall in defendant's store in that city, and her subsequent suit seeks to recover damages because of defendant's alleged negligence in failing to maintain a safe place for her as an invitee on its premises. At the close of her evidence the trial court granted defendant's motion for a directed verdict, judgment for the defendant was entered, and we have this appeal.

While plaintiff's age does not definitely appear, it is evident she was an elderly woman. However, she was under no physical handicap. She wore bifocal glasses, but had no trouble in seeing up, down or straight ahead. This is her own testimony. On the

date in question, about noon, she went to a department store in Sioux City operated by the defendant for the purpose of eating lunch in the tearoom and thereafter playing bridge with three other women. She had done this many times before and was familiar with the tearoom and its surroundings. It was a regular procedure for her and her friends on Tuesday of each week. A few days before the date in question she had read an advertisement in the local newspaper to the effect that a style show would be held on April 29, but had forgotten it when she went to the store.

The tearoom was located on the second floor of the store. She walked up the stairs to the second floor, entering the south end of the tearoom. She started north in the tearoom, and then noticed there were more people present than usual, and the tables were not arranged as they ordinarily were. She walked straight north until she stumbled into a platform located about in the middle of the tearoom floor. This platform was not usually there, but was a temporary structure intended for use of the models in the style show. There is no evidence that the style show was then in progress, or at least that the plaintiff observed it. She did not notice the platform, but was not injured when she collided with it. She then turned east along the platform, guiding herself with one hand on it, until she reached the east end of the south side. She did not observe the platform as she approached it because she was looking for her friends with whom she intended to eat lunch and play bridge.

When she reached the east end of the south side of the platform, she turned north, took one step and fell over a set of steps near the south end of the east side. The platform is described by the plaintiff as having been about knee high; and the steps over which she fell were there for the purpose of leading up to the platform and permitting those who wished to use it to gain access to it. They were of course temporary, as was the platform, and were a part of the style show planned for that day. There were no warning signs advising of the presence of the steps, and no other warning was given by the defendant.

An aisle led along the east end of the platform, where the steps were located, and tables were set a few feet to the east. At one of these, located about opposite the southeast corner of the platform, the corner which the plaintiff reached and which she turned just before she collided with the steps, plaintiff observed a friend, Mrs. Matilda Budden. Of the occurrence as she reached the corner, the plaintiff testified: "* * * when I got to the east end of the platform, I turned to see if I could see the girls, and I fell over a step at the east end of the platform. Just before I fell over the step, I saw a friend of mine and she waved at me; her name was Mrs. Budden. I fell right at her table." Again she said "I was standing erect just before I fell. I was looking for the ladies, and I was confused." Again: "When I faced north my friend Mrs. Budden would be somewhat to my right as I faced north. Q. And were you looking at her as you started forward? A. Well, yes, after I was at the end I looked at her and waved, and then I looked at the—well, I didn't have time, I just fell. Q. So you were still looking at your friend when you fell? A. Yes. She was somewhat to the right of where I was walking. * * * Q. And that is the direction you were looking at her when you fell? A. Yes, looking at her."

Some of this testimony was elicited on direct examination, and some on cross. The plaintiff further said the lighting was good and she had no trouble in seeing with the glasses she was wearing. She assumed there was no step at the end of the platform; she did not look. She did not know the width of the aisle along the east side of the platform, but there was some space there. Mrs. Budden, as a witness for the plaintiff, testified on cross-examination that Mrs. Corrigan was facing north when she fell over the steps. The record further shows this: "Q. Was she looking toward you? A. Yes, that is toward our table looking for her table." Mrs. Budden was not one of the women with whom the plaintiff expected to play cards and for whom she was looking.

█ █ I. The trial court sustained the defendant's motion to direct generally, which means on all six grounds. If any of these was good, the motion was properly granted. We think

Ground 3, which asserts failure of the plaintiff to show defendant's negligence, supports the ruling of the court, and we do not consider the others. We also reaffirm without citation of authority the established rule that we take the plaintiff's evidence in the aspect most favorable to her which it will reasonably bear when considering the propriety of a ruling on a motion to direct. It is also clear that the plaintiff had the status of an invitee.

II. We are here concerned with the duty owed by a possessor of real estate to an invitee upon his premises. We have had occasion to consider this several times in recent years. Our problem here is that of application of the principles announced in Anderson v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858, and Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252. As we said in Stafford v. Gowing, 236 Iowa 171, 177, 18 N.W.2d 156, 159, "The facts of each particular case of this kind are controlling on the question of negligence." We quoted this with approval in Holmes v. Gross, 250 Iowa 238, 242, 93 N.W.2d 714, 718.

The pertinent facts important in the case at bar are set out above. The plaintiff thinks they bring her within the holding in Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140. We are unable to agree. In fact, we think our discussion in the Warner case makes clear the distinction between that case and the plaintiff's situation here, and requires an affirmance of the trial court's holding that no negligence of the defendant sufficient to engender a jury question is shown.

The Warner case is an exception to the general rule which we there announced. We said:

"Steps and changes in floor levels are so common in buildings, he [defendant] argues, that an invitee must be on the alert for them; he cannot walk along indifferent to what lies before his feet and then be heard to complain if some change in level causes a fall and consequent injury.

"Undoubtedly this is the general rule." Warner v. Hansen, supra, loc. cit. 251 Iowa 689, 102 N.W.2d 143.

In the Warner case we found and applied an exception to the rule, arising from the distraction of the plaintiff by displays

of merchandise by the defendant, and because she had been told by an employee of the defendant that there was a railing on the stairway which she descended, which in fact did not reach entirely to the bottom of the descent which she must take to reach her destination on the basement floor. This distraction, of course, must be one caused by the possessor of the premises. It does not avail the plaintiff when, as here, the distraction is of her own making.

The record shows clearly that the steps over which the plaintiff fell were in plain sight, if she had looked. In fact, it may plausibly be urged that the presence of the platform itself should have been an indication that steps might be encountered somewhere along it. It was there for a purpose; and in order to use it steps would ordinarily be provided. But in any event the steps were in no way concealed, the lighting and plaintiff's eyesight were both good. She did not see the steps because she had furnished her own distraction. She was looking about the room for her friends whom she expected to meet there. To some extent also she was looking at Mrs. Budden, her acquaintance who sat to the east of the southeast corner of the platform. If the style show had been under way and plaintiff had been distracted by it, she might well have been within the rule of the Warner case. But her own evidence makes it clear the cause of her failure to see the steps was because she was not looking; and she was not looking at what lay before her feet because she was attempting to locate her friends. We have said: "Of course a storekeeper can hardly be held responsible for distractions not of his own making." Warner v. Hansen, supra, loc. cit. 251 Iowa 692, 102 N.W.2d 145.

III. In Atherton v. Hoenig's Grocery, supra, we quoted with approval from 38 Am. Jur., Negligence, section 97, pages 757, 758. " 'Plaintiff was an invitee upon defendant's premises. It was defendant's duty to use ordinary care to warn plaintiff of any danger of which defendant knew and of which plaintiff was not aware.' " Atherton v. Hoenig's Grocery, loc. cit. 249 Iowa 54, 86 N.W.2d 254, 255 (quoted from Stafford v. Gowing, 236 Iowa 171, 177, 18 N.W.2d 156, 158).

Cases from other jurisdictions have applied the general

rule that an invitee must ordinarily take notice of changes in floor levels, steps or other obstacles which are plainly visible to one who takes the trouble to look, absent any distracting circumstances occasioned by the controller of the premises. Benton v. United Bank Building Co., 223 N. C. 809, 28 S.E.2d 491, 493; Cates v. Evans, Mo. App., 142 S.W.2d 654; Hunnewell v. Haskell, 174 Mass. 557, 55 N.E. 320; Zuercher v. Northern Jobbing Co., 243 Minn. 166, 171, 66 N.W.2d 892, 897; Trimyer v. Norfolk Tallow Co., 192 Va. 776, 781, 66 S.E.2d 441, 444. Many others might be cited; and see Restatement, Torts, Volume 2, section 343. It is true the plaintiff in the instant case here says the steps were "hidden" from her view as she passed along the south side of the platform. But they were in plain sight if she had taken care to look as she turned the corner; and the defendant cannot be held to such a high degree of care as that it must have anticipated her failure to do so.

In her argument plaintiff asserts that the question for determination here is "Did the Appellant have actual knowledge of the defect?" This is not a correct statement of the applicable law. An important part of the rule is omitted.

In Atherton v. Hoenig's Grocery, supra, we said: "The duty owed by the inviter is to those, and to those only, who do not know, *or, in the exercise of reasonable care for their own safety, have no reasonable means of knowing,* of defects or dangers." (Italics supplied.) Atherton v. Hoenig's Grocery, supra, loc. cit. 249 Iowa 55, 86 N.W.2d 255. Another way of saying it is this: "* * * there is no liability for injuries from dangers that are obvious, *reasonably apparent,* or as well known to the persons injured as they are to the owner or occupant of the premises." (Italics supplied.) Anderson v. Younker Brothers, Inc., supra, loc. cit. 249 Iowa 927, 89 N.W.2d 861. If a danger is "reasonably apparent" it follows that an invitee exercising reasonable care for his own safety has a reasonable means of knowing of it.

IV. We have examined the authorities cited by the plaintiff. Warner v. Hansen, supra, has already been distinguished. Holmes v. Gross, supra, concerned a fall after opening an

unmarked door down a totally unlighted stairway. Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 N.W.2d 429, 451, and Noyes v. Des Moines Club, 178 Iowa 815, 160 N.W. 215, are cases of falls into unguarded elevator shafts in darkened places and with protecting gates, normally closed, left open. Stafford v. Gowing, 236 Iowa 171, 18 N.W.2d 156, and Crawford v. Emerson Construction Co., 222 Iowa 378, 269 N.W. 334, deal with active negligences in which the plaintiff was injured by affirmative acts of the defendant. Gardner v. Waterloo Cream Separator Co., 134 Iowa 6, 111 N.W. 316, involved an unguarded elevator shaft and a failure to warn of it by defendant's employee charged with that duty. Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 86 N.W.2d 822, was primarily concerned with the claimed contributory negligence of the plaintiff. The matter of visibility was important; there was evidence that the ramp on which the plaintiff fell by slipping on a lettuce leaf was unlighted and dark.

We see no escape from the conclusion that the steps over which plaintiff fell were plainly visible and her failure to see them was due to her own failure to look because of a distraction of her own making. There was no sufficient evidence of negligence of the defendant to require submission to the jury.—Affirmed.

All JUSTICES concur.