PHOEBE KRAMER, appellant, v. F. W. WOOLWORTH COMPANY, a corporation, appellee.

No. 51045.

(Reported in 123 N.W.2d 572)

SEPTEMBER 17, 1963.

Paul J. Yaneff, of Whicher, Davis & Yaneff, of Sioux City, for appellant.

John Gleysteen, of Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City, for appellee.

THORNTON, J.—Plaintiff brings this action to recover for injuries suffered in a fall on a stairway in defendant's store. She appeals from a directed verdict. She contends for reversal a jury question was presented, it was error not permitting a witness to testify to the condition of the stairs the day following, and in not permitting plaintiff to call defendant's manager as an adverse witness.

The first proposition narrows down to the question of the sufficiency of the evidence to show constructive notice of the condition alleged as causing the fall, a gum spot, on the part of defendant. The jury could properly find plaintiff was an invitee, and in the exercise of due care, descended the stairs to the basement, and while so doing fell from the step above the first landing. The cause of the fall was a gum spot on this step. There

was a rug displayed above the landing in such a manner as to attract the attention of those descending the stairs. Plaintiff was looking at the rug at the time she fell.

■■ . I. Plaintiff claims the distraction caused by the rug is involved in the question of negligence. However, it does not assist plaintiff on the question of constructive notice of the gum spot. Defendant must first have actual or constructive notice of the defect complained of before it can be negligent in distracting one's attention therefrom. That plaintiff's attention was distracted is evidence plaintiff was in the exercise of due care. Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140. The leading edge of the step was covered with seven inches of nonskid abrasive material.

II. Plaintiff testified she observed the gum spot from a standing position after her fall, the gum spot was two inches around, it was stepped down flat, looked like a gum spot, it was **about two feet in** from the railing on the first step from the landing.

"My right heel got caught on this spot. * * * The gum spot was against the dark background. * * * the spot * * * was a black spot, it was raised, it was rough. * * * the heel of my foot had been standing on that spot for a moment or so. It was a rough feeling and it was hard. It was brown, and black and dirty. * * * It was hard. It was flattened out, it was old gum. I do not know how long it had been there. I knew it had been there for some time or it wouldn't have been so hard. I do not know how many people may have walked on that piece of gum. I don't think that I was the first one to have walked on that piece of gum but I do not know. * * * it was hard and rough. I couldn't say just how much it was raised. It was pretty well flattened out on the edges and dark and dirty. It was real dark and dirty. * * * The spot * * * was the only spot I saw on the stairway. I do not know how the gum spot got there. I don't know how long it had been there but it wasn't fresh gum. It was not fresh gum by any means, because it was hard and dirty. It looked like it had been stepped on for some time. It looked like it had been trampled on, naturally, the sides were, but it wasn't trampled down solid. It was high in the center. It had

been there long enough that it was hard. It was fastened. It must have been embedded in the step, because it was hard—it was fastened. I didn't reach down and feel it but I could feel when I stepped * * *. It was more brown than black. It was not blackjack gum * * *. I had a good look at it so I feel that I know what it was. None of it stuck on my shoe."

The fall occurred about 1:30 p.m. Defendant's manager testified the steps were used by floorwalkers and other employees during the day. The employees in the basement use the stairs to go to and from the lunch counter located not far from the top of the stairs. The evidence shows there were not many people on the stairs at the time and not too many customers in the store according to plaintiff's observation.

We have previously quoted from Restatement, Torts, Volume 2, section 343, in Corkery v. Greenberg, 253 Iowa 846, 849, 114 N.W.2d 327, 329, and Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252, 255:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, * * *."

The portion of the above important here is, "(a) knows, or by the exercise of reasonable care could discover the condition * * *." The owner's liability must be predicated on his superior knowledge concerning the danger. Corkery v. Greenberg, 253 Iowa 846, 114 N.W.2d 327, and citations.

Plaintiff has the burden to show this knowledge. Of course if the evidence shows defendant or its employees created the condition no further evidence is necessary. See Brown v. Slack, 159 Neb. 142, 65 N.W.2d 382, 385. Here such is not the case, nor is there any evidence of actual knowledge. Plaintiff must produce evidence from which reasonable minds can fairly find the condition, here the gum spot, existed for such a length of time that defendant in the exercise of reasonable care should have known of it. Annotations, 61 A. L. R.2d 110, 126, and 61

A. L. R.2d 174, 182. She is entitled to the most favorable construction her evidence will reasonably bear. Plaintiff's testimony above set out is the only testimony concerning the gum spot. Her description of the gum spot includes, perhaps, as a necessary part of the description, her opinion, the gum was old, it had been there for some time, etc., but her evidence definitely shows she had no idea of the length of time it had been on the step. From her description we cannot say it had been there any length of time. Its condition would have been the same if it had been stepped on once or twice or more within ten minutes or five or ten hours. The evidence does not indicate the spot was readily discernible by an employee using the stairs in pursuit of other duties or going to lunch. Though the evidence does show employees used the stairs, and of necessity some used the stairs during the lunch hour shortly before plaintiff used it, there is no showing of use by personnel charged with keeping the stairs and floor clean. There is no showing of an employee in the immediate vicinity for such a length of time or position he should have known of the spot as in Rudzinski v. Warner Theatres, Inc., 16 Wis.2d 241, 114 N.W.2d 466, where an usher was seated on a stool six feet from wet spots on the floor. The annotation at 61 A. L. R.2d 174 deals with the exact question we have here, starting at page 182. Cases holding the proof was sufficient to warrant a finding of constructive notice are set out starting at page 183. An examination of those cases discloses the difference between the evidence in them and this case. In each there is either a circumstance or evidence of the presence of the debris for some period of time as the basis for constructive notice.

In Savaiano v. Twelfth Street Store, 330 Ill. App. 248, 70 N.E.2d 744, only the abstract was published, but the headnote by West Publishing Company shows vomitus was on the stairs 10 or 15 minutes before the fall.

In Ratering v. Mele, 11 N. J. Super. 211, 78 A.2d 105, the evidence showed the debris on the steps and in the vestibule had existed for at least two and a half hours, in fact the amount was greater, the evidence showed a large number of patrons were at the place of business and the area had not been cleaned since morning, the fall occurred at 1:30 a.m.

In Konopka v. Montgomery Ward & Co.; 133 W. Va. 775, 58 S.E.2d 128, 130, 131, there was evidence showing gravel had been carried onto the stairs by those walking from the parking lot at least three or four times a week for a month prior to the fall and there was evidence of poor lighting.

In Zizi v. Gabriele D'Annunzio Lodge No. 22, Order of Sons of Italy in America, 14 N. J. Super. 200, 204, 83 A.2d 334, 336, is this statement:

"Proof that the presence of hazardous 'slippery' refuse matter on the stairway was not a chance occurrence but a repeated condition, concomitant of such affairs, would support an inference that the condition which existed on the night in question was or should have been foreseen by defendants and would make the case one in which a jury could infer knowledge thereof by defendants, with consequent negligence if they failed to take measures reasonably designed to prevent such dangerous conditions to continue."

The above are sufficient to illustrate the difference. Cases sustaining our view that the description of the condition of the gum spot is not sufficient to sustain a finding it had been on the stairs for such a time as to have been discovered and remedied by defendant are found starting at page 185 of 61 A. L. R.2d. Human experience is that it does not take any particular length of time for a gum spot to appear as here described, as in the case of rotten and decayed condition of wood. See Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1260, 30 N.W.2d 97.

Cases involving chewing gum spots sustaining our holding here are Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357; and Newell v. William Filene's Sons Co., 296 Mass. 489, 6 N.E.2d 820.

III. Plaintiff contends it was error not to permit her granddaughter to testify to the condition of the step on the day following the accident. She cites no authority that such evidence is admissible. She made no offer of proof. The question asked was, "* * * whether or not you observed substantially the same as what she [plaintiff] testified as to the first step?" There is a strong indication the answer would have been in the affirmative

but we do not know that. The general rule is, the failure to offer proof of excluded testimony leaves nothing for review. Trachta v. Iowa State Highway Commission, 249 Iowa 374, 386, 86 N.W.2d 849, 857, and citations. There is an exception, where, upon the whole record, what is sought to be proven is apparent. Sandon v. John Hancock Mutual Life Ins. Co., 245 Iowa 390, 395, 62 N.W.2d 247. Here what the answer would be is only apparent from the question asked and what plaintiff now says it would have been. Plaintiff is not within the exception. There is nothing before us for review.

■ Likewise, plaintiff complains because she was not allowed to examine defendant's manager as an adverse witness. Here again no offer of proof was made. Plaintiff did examine defendant's manager. We appreciate plaintiff's complaint is directed to the fact she wanted to cross-examine the manager without vouching for his credibility or being bound by his testimony. However, we do not have a rule or statute allowing or defining such practice as Federal Rule of Civil Procedure No. 43(b), or as in some of the other states. A step in this direction is found in Division V, Discovery and Inspection, and Division VII, Depositions and Perpetuation of Testimony, in our Rules of Civil Procedure. Because of these it is fair to assume the adoption of a rule similar to Federal Rule No. 43(b) has been considered and rejected. This problem is similar to requesting the court to make a particular person a court's witness. We considered the refusal of such request in McBride v. Dexter, 250 Iowa 7, 11, 12, 92 N.W.2d 443, and the restricting of the examination of a court's witness in Scroggs Feed and Grain Co. v. Vos, 254 Iowa 620, 623, 118 N.W.2d 543, 544, 545. In each instance we held the matter was discretionary with the trial court.

■ Plaintiff is only bound by the testimony of defendant's manager to the extent she is unable to show facts to the contrary. State v. Hobbs, 252 Iowa 432, 437–439, 107 N.W.2d 238, 241, 242; and Wilcox v. Hilligas, 254 Iowa 204, 207, 117 N.W.2d 42, 43, 44.

The case must be and is hereby—Affirmed.

All JUSTICES concur except GARFIELD, C. J., who dissents.