HELEN M. FORSBERG, appellant, v. M. L. PARKER COMPANY, a corporation, appellee.

No. 51895.

(Reported in 139 N.W.2d 315)

JANUARY 11, 1966.

Newport, Wine & Schebler, of Davenport, for appellant.

Lane & Waterman, of Davenport, for appellee.

THORNTON, J.—Plaintiff's action is to recover damages for injuries suffered in a fall over some rubber mats at the end of a display counter.

Defendant's motion to direct in the trial court contained a

number of grounds, here defendant relies solely on plaintiff's failure to establish any actionable negligence.

I. Plaintiff, a lady 60 years old at the time, went to defendant's store to purchase a filler for a thermos bottle between 7 and 8 p.m. in the evening. The store was open until 9 p.m. She took the elevator to the fifth floor and walked to the counter where the fillers were displayed. A clerk assisted her in obtaining the correct filler, took her money and proceeded to the cashier's desk. Plaintiff closed her purse and billfold and followed the clerk to get her change and package. On the way plaintiff fell or tripped over a pile of rubber mats at the end of the thermos bottle counter. The exhibits show the counter was 47½ inches wide and 34½ inches high. The rubber mats were 13 inches wide and 22 inches long. The pile of mats was six inches high. Defendant contends there was a sign seven inches wide and 11 inches high on top of the pile of mats. Plaintiff testified she did not see such a sign, the jury could find such sign was not there at the time. The rubber mats were stacked at the east end of the counter extending into the aisle 13 inches and 22 inches along the counter approximately equidistant between the north and south edges of the counter. The aisle to the east of the counter was four and a half feet wide. Plaintiff, at the time she purchased the filler, was standing on the north side of the counter three feet west of the northeast corner of the counter. The cashier's desk was to the south and east, the clerk used the aisle to the east of the thermos bottle counter. It was a proper or convenient route. After plaintiff gave her money to the clerk, the clerk, from plaintiff's right, walked behind her to the aisle to the east, and turned south into the aisle to go to the cashier's desk. Plaintiff closed her purse and with her purse and billfold in her hand started to follow the clerk. She walked the three feet to the corner, turned to her right and caught her toe in the mats and fell. The distance from the northeast corner of the counter to the mats was approximately 13 inches. Plaintiff, five feet two inches tall, could not see the mats from her position when she was purchasing the filler. The jury could properly find she could not see the mats over the counter 34½ inches high until she reached the corner. Plaintiff then had a

step or distance of 13 inches in which to observe the mats, black in color against a light colored floor.

Plaintiff's testimony is, "* * * I turned and started to follow her to receive my change and my package. I caught my toe and fell down. * * * I caught it on those mats. * * * I did not see the mats prior to the time I tripped over them. I first saw them after * * * they seated me on a chair. * * * they [the mats] were scattered all over after I fell. * * * I never did see such a sign. * * * I was following the clerk to the cash register. * * * as I walked around the corner there, well I really wasn't looking at anything. I was just starting to follow her. I was looking at her retreating form, where she was going. * * * I am able to see well, * * *. I did not have any problems seeing where I was going * * *. The lighting was adequate. * * * As to whether I could have seen the stack of mats as I reached a point near the east end of the counter before starting to make the turn, if I looked at the floor, I don't know. * * * I wasn't looking at the floor. I was looking at the merchandise. After I selected my filler and turned around * * * I was looking straight ahead. I was looking at nothing in particular. I had gone to the store for one specific purpose * * *. I had purchased it and was not looking at anything else. As to whether it is fair to say that there wasn't anything distracting me at this particular point after I had purchased the filler, not especially: There were no distractions. I was looking forward with the intention of following the clerk. As to whether I have testified that there were no distractions of any type, I wasn't looking at anything in particular or for anything in particular."

■ Defendant concedes it placed the mats on display at the end of the counter and that plaintiff is an invitee. No issue of knowledge is involved. Bartels v. Cair-Dem, Incorporated, 255 Iowa 834, 840, 124 N.W.2d 514, 518. No authorities need be cited for the following: in considering a motion to direct, plaintiff's evidence is given the most favorable consideration it will reasonably bear; plaintiff has the burden of proof by a preponderance of evidence on the issue of defendant's negligence, generally questions of negligence and proximate cause are for the jury— it is only in exceptional cases they may be decided as a matter

of law; and even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, a jury question is engendered. See rule 344(f)2, 8, 10 and 17, Rules of Civil Procedure.

The facts of each particular case of this kind are controlling on the question of negligence. Bartels v. Cair-Dem, Incorporated, supra, at page 837 of 255 Iowa, page 516 of 124 N.W.2d, and citations. A storekeeper is not liable for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as to the storekeeper. The duty owed by the storekeeper is to those only who do not know or in the exercise of ordinary care for their own safety have no reasonable means of knowing of defects or dangers. Bartels, supra, at page 843 of 255 Iowa, page 519 of 124 N.W.2d, and citations. In Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 1175, 110 N.W.2d 246, 250, we said:

"If a danger is 'reasonably apparent' it follows that an invitee exercising reasonable care for his own safety has a reasonable means of knowing of it."

In each of the cases cited above and in the cases cited in them we equate "reasonably apparent" with "obvious" and "as well known to the person injured as to the owner or occupant."

Plaintiff does urge she was distracted but states such is not necessary as the mats located as they were, were hidden and constituted a trap or pitfall as to her.

Defendant relies chiefly on Crouch v. Pauley, 254 Iowa 14, 116 N.W.2d 486, and Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 110 N.W.2d 246. In Corrigan at page 1175 of 252 Iowa, page 249 of 110 N.W.2d, we said:

"It is true the plaintiff * * * says the steps were 'hidden' from her view as she passed along the south side of the platform. But they were in plain sight if she had taken care to look as she turned the corner; and the defendant cannot be held to such a high degree of care as that it must have anticipated her failure to do so."

The question in Corrigan and here is, can the jury properly infer from the evidence the danger, here the mats, was not obvious, reasonably apparent or as well known to the person injured as to the owner or occupant?

518

■ The factual differences in Corrigan and this case are, in Corrigan the platform was temporary, constructed for a style show, plaintiff knew of it, she had run into it as she approached from the south, walked along the south side of it until she came to the east end, turned north, took one step and fell over the step near the south end of the east side. As she turned she was looking north and east for some other ladies she intended to play bridge with, and the platform was knee high. Here plaintiff made a purchase from an apparently permanent counter, turned to follow a clerk to the cashier's counter, walked three feet to the corner of the counter and caught her toe in the mats 13 inches away as she turned. Plaintiff was looking after the retreating form of the clerk with the intention of following her when she turned the corner, she was not looking at the floor. The counter here was 34½ inches high and 47½ inches wide, plaintiff could not see the mats until she reached the corner and not then unless she looked to the floor. She had no reason to believe anything would be protruding into the north-south aisle from the end of the counter. It is true, as we held in Corrigan, if she had looked she could have seen the mats. However, we do not now think a stack of mats on the floor 13 inches around the corner in an aisle is obvious, readily apparent or as well known to plaintiff as to defendant as a matter of law when plaintiff was following a clerk and watching her retreating form. It cannot be said as a matter of law plaintiff was not exercising reasonable care for her own safety. The jury could properly find plaintiff was acting with reasonable care in natural response to the situation in following and looking after the clerk, that it is not failure to exercise reasonable care to so direct your sight as not to see a six-inch high stack of mats 13 inches wide around a corner in so doing. We think under this record the jury could properly find defendant owed a duty to plaintiff to make the aisle safe or give her a reasonable warning.

■ Plaintiff could properly be found to be a person in the exercise of reasonable care for her own safety and who had no reasonable means of knowing of the mats until it was too late. To be in the exercise of reasonable care she need not act or be more watchful than anyone else, she need not look for traps or

pitfalls or stop and look around each counter before turning. She need only act as a reasonably prudent person. Defendant here has a duty to the persons coming from the east-west aisle and turning into the north-south aisle, and that duty is not to place an obstacle in their path that is not reasonably apparent, or if it does to give an adequate warning. Simply stated, the jury could properly find the stack of mats was so close to the corner of the counter where plaintiff turned as not to be reasonably apparent to plaintiff walking in the exercise of reasonable care for her own safety. Though there is some difference in the physical setup in Corrigan and here, and plaintiff there was looking for friends, we recognize the language there used required plaintiff to see whatever was in plain sight on turning a corner no matter how close and if it were on the floor. To the extent Corrigan is in conflict herewith it is no longer controlling.

As sustaining this view as to how quickly a trap, pitfall or defect in a person's path becomes obvious, reasonably apparent or as well known to the person injured as to the owner or occupant see Lattner v. Immaculate Conception Church, 255 Iowa 120, 121 N.W.2d 639; and annotation, 61 A. L. R.2d 110.

II. Plaintiff's own testimony above set out shows as a matter of law plaintiff was not distracted by merchandise displayed by defendant, rather her actions were in response to the situation, such may properly be found to be normal but not due to merchandise displayed as in Bartels, supra, or Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140.

III. Plaintiff contends it was error for the trial court to sustain objections to a hypothetical question propounded to an owner and general manager of a personnel service as to whether plaintiff in her physical condition would be able to obtain employment. The objections were no proper foundation laid, improper as to form and too general in application. An examination of the question discloses there are included there medical facts which would require knowledge on the part of the witness of the consequences of plaintiff's injury. The record does not disclose this knowledge on the part of the witness. It was not error to sustain the objection. Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1210, 124 N.W.2d 557, 564, and citations.

520

For the error pointed out in Division I the case is reversed and remanded.

All Justices concur except Snell and Rawlings, JJ., who concur specially.

Snell, J.—I concur in the result.

I think this case is distinguishable from Corrigan v. Younker Brothers, Inc., cited by the majority. I do not think it necessary to say that "To the extent Corrigan is in conflict herewith it is no longer controlling."

Rawlings, J., joins in this special concurrence.