**Raymond G. LING, Appellee,**

v.

**HOSTS INCORPORATED, d/b/a Hotel Fort Des Moines, Appellant.**

No. 53193.

Supreme Court of Iowa.

Jan. 14, 1969.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellee.

GARFIELD, Chief Justice.

Plaintiff Ling, a paying guest in defendant's hotel, recovered judgment on a jury verdict for personal injury from a fall in the hotel lobby. Defendant's appeal challenges the sufficiency of the evidence of its negligence and correctness of the jury instructions as to the duty of care defendant owed plaintiff.

Alleged cause of the fall was defendant's negligence in failing to: (1) remove accumulated water from the marble floor at the place where plaintiff fell, and (2) warn him of its dangerous condition.

I. In considering the sufficiency of the evidence of defendant's negligence as against its motions for directed verdict and judgment notwithstanding the verdict, we view the evidence in the light most favorable to plaintiff. This is the effect of Rule 344(f), par. 2 Rules of Civil Procedure.

II. Plaintiff arrived at Hotel Fort Des Moines in Des Moines between 9:15 and 9:30 on the evening of December 27, 1966 (just two years before this is written) after a plane trip from his home in Atlanta and a taxi ride from the Des Moines airport. Plaintiff testified: "It was snowing and blowing, there was a lot of snow and ice and I'd say it was a blizzard. Conditions of the streets were bad. * * * wind was blowing in gale quantities. * * * When I arrived at the hotel I got out of the cab, there was considerable snow on the sidewalk and a snow bank to step over. The cab driver put my suitcase in the vestibule of the 10th Street entrance to the hotel. * * * I carried a suit bag into the vestibule where I retrieved my suitcase."

Plaintiff further said he shook his feet and scuffed them to get the excess snow off; went through a second set of doors into the lobby, carrying his suitcase and suit bag; walked straight ahead on a rubber mat; he had stayed at the hotel several times and knew the personnel there; he smiled at the cashier; the bellman was evidently on another errand and not available to assist plaintiff; he stepped off the mat toward a coat rack on the marble floor to his left to leave his bag and suitcase before registering; after he took about one step off the mat plaintiff's feet went out from under him and he fell backward on his head.

Plaintiff further testified: "I am positive I didn't have any ice or snow on my shoes because I scuffed my feet when I came in the lobby and walked at least 10 feet on the rubber mat and I am sure the moisture was off the bottom of my feet."

The then room clerk and a bellman helped plaintiff up from the floor and onto a nearby davenport. Plaintiff said that while on the davenport he looked over to the area where he fell and the floor was dirty and wet; the back of his topcoat was wet and dirty with mud you would get off a floor that has been tracked. "There definitely was water on the floor which made it slippery."

After the bellman helped plaintiff to his room in a wheel chair the former mentioned it was a miserable night; the accident was unfortunate; it was also unfortunate there weren't more mats which would have helped the situation; he mentioned that the floor was dirty and wet and had to be cleaned up again; also that there was a porter who was supposed to handle "this" but he was busy; no hotel employee warned plaintiff about the water he said he slipped and fell in.

On cross-examination plaintiff testified the sidewalks in front of the hotel had snow and slush on them; when he got out of his cab it was snowing heavily and blowing considerably; his flight from Chicago to Des Moines was delayed about three hours because of weather conditions. Also this: "Prior to my fall, I did not notice what condition the lobby floor was in. I was looking at the coat rack, not at the floor. It wasn't until after I fell that I saw water on the floor. The area where I

fell looked different from the rest of the lobby. This particular area has a lot of traffic. In the particular area where I looked the floor was dirty and wet, and that was along side the mat. In the vicinity of the mat and check-in counter, the floor was wet and dirty. I made my observation about the area around the check-in counter when I was in front of it after I had fallen and before I went to my room.

"The lobby wasn't crowded by any means but a few people were around."

Except for brief testimony from the cashier in the hotel that she saw plaintiff on the floor with one leg at an odd angle, he rested his case with his own testimony. Plaintiff suffered a broken ankle when he fell.

Witnesses for defendant were the hotel manager, a porter who was off duty on the evening of the accident (the porter then on duty was serving in the Marines in California at trial time); the then room clerk —assistant manager (not connected with the hotel at trial time) and the bellman on duty when plaintiff fell. Plaintiff relies on some testimony of these witnesses.

The manager testified it was the primary responsibility of the porter to keep the lobby clean, the floor mopped and do general clean-up work; the hotel is open 24 hours a day and a man is always on duty to clean the lobby and keep it clean always; surface of the lobby not covered by mats or carpet was marble; the hotel had 865,000 customers in 1966, most of whom came for food or beverage rather than rooms; no fall in the lobby other than plaintiff's was reported during the year.

On cross-examination the manager said the porters were ordered to keep the lobby spic and span without exception; during a heavy snow the mop bucket is brought into the lobby on a truck which stays there and extra porters are hired to assist, "we would want someone there to watch very carefully for snow and ice that is tracked in; * * * I consider it necessary to have mops present to prevent the marble from being slippery from snow and ice or water."

The off-duty porter testified duties of a porter were to keep the lobby clean and water off the floor at all times; on snowy days we constantly mop every hour, maybe every few minutes if it is real bad out, maybe every 15 minutes.

The then room clerk—assistant' manager said he saw plaintiff sitting on the floor right after his fall and observed the floor in that area; it was dry and clean; he saw some snow on part of plaintiff's shoe and that it was wet; plaintiff took off his shoe and handed it to the witness while the former looked at his ankle; the witness saw that the bottom of the shoe was wet; plaintiff told the witness not to worry about the accident, it was plaintiff's fault (plaintiff denied he made this statement); traffic and the number of customers at the hotel that evening were "very nil;" he recalled the lobby had been cleaned that evening before plaintiff fell, it couldn't have been too much prior to the fall because the floor was dry and clean; he observed a little water in the area where plaintiff had fallen that looked like it came off a shoe, dirty water and snow were on the floor by plaintiff's shoe; a similar condition did not exist in the outer area of the lobby; the witness and the bellman moved plaintiff from his sitting position on the floor to the davenport.

The bellman said he helped the room clerk put plaintiff on the davenport; he observed his shoes and they were damp; a little water was on the floor where plaintiff sat; when the witness first saw plaintiff the floor was pretty clean and dry; there was very little traffic in or out that evening; he recalled the on-duty porter cleaned the floor several times earlier in the evening at intervals; the water he saw on the floor after plaintiff fell was "just a couple of those small spots;" there wasn't much business that night and it didn't require more than one porter on duty.

III. The principal argument in support of defendant's first assigned error challenging the sufficiency of the evidence is that where a defendant-inviter does not create the condition causing its invitee to fall it must have had actual or constructive notice of the condition for a sufficient time to enable defendant to remedy it or to warn the invitee thereof. It is said there is no sufficient evidence of such notice here.

Plaintiff argues that while it is literally true recent Iowa cases have not abandoned the requirement of actual or constructive notice on which defendant relies, "they have not embraced the requirement. In fact notice was not an issue in any of those cases since defendant actually knew of the dangerous condition in each case." Plaintiff's view is that the vital questions are whether defendant exercised reasonable care to discover the alleged slippery condition of the floor and exercised such care to protect invitees against the danger. He asserts both questions were for the jury.

■■ This is not a case where defendant-occupant created the alleged dangerous condition which caused plaintiff's injury. As to conditions so created, the owner or occupant is charged with knowledge thereof. In order to impose liability for injury to an invitee from a dangerous condition of premises created by others, the owner or occupant must have known of it or it must have existed for such time it was his duty in the exercise of ordinary care to know it and remedy it or warn the invitee thereof. We have so held many times and it is the law generally.

In Bartels v. Cair-Dem, Inc., 255 Iowa 834, 840–841, 124 N.W.2d 514, 518, plaintiff was injured by falling over an obstruction temporarily left in an aisle of a supermarket. As there observed, the rules stated in the opinion apply to injuries from other claimed dangerous conditions of the premises. We quote from the opinion: "A familiar and important principle in cases of this kind is that liability of a store owner or occupant for negligence in failing to keep his premises safe, or to warn invitees of existing danger, is predicated on the owner's or occupant's superior knowledge concerning the danger. (citations) * *

"On this question of knowledge there are two rules of fundamental significance. If the storekeeper or his servant places the obstacle on the floor, proof of knowledge is unnecessary; the storekeeper will be presumed to have notice. (citations) * * Schafer v. Hotel Martin Co., 249 Iowa 866, 871, 89 N.W.2d 373, 376, and Vollmar v. J. C. Penney Co., supra, at page 1031 of 251 Iowa, page 718 of 103 N.W.2d, recognize this rule as applied to claimed dangerous condition of the premises.

"The second rule is that where presence of the obstacle is traceable to persons for whom the proprietor is not responsible, proof of his negligence requires a showing he had actual notice thereof or that the condition existed for such a length of time that in the exercise of reasonable care he should have known of it. (citations) * *

"The annotation in 61 A.L.R.2d, supra, at pages 124–6 says in effect no precedent has been found indicating disagreement with either of these two rules."

See also Anno. 62 A.L.R.2d 6, 28–29, 31, 34. Bartels v. Cair-Dem, Inc. is cited with approval in Meier v. Phillips, 256 Iowa 757, 759, 129 N.W.2d 92, 94; Forsberg v. M. L. Parker Co., 258 Iowa 513, 516, 139 N.W.2d 315, 317; Hanson v. Town & Country Shopping Center, 259 Iowa 542, 550, 144 N.W.2d 870, 875; Chevraux v. Nahas, Iowa, 150 N.W.2d 78, 80. See also Parsons v. H. L. Green Co., Inc., 233 Iowa 648, 652, 10 N.W.2d 40, 42; Kramer v. F. W. Woolworth Co., 255 Iowa 633, 636, 123 N.W.2d 572, 574; Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1207, 1209–1210, 124 N.W.2d 557, 562–564, where plaintiff was injured from falling on a slippery floor. In Meier plaintiff fell on defendant's slippery sidewalk. In Hanson plaintiff fell on ice in defendant's parking lot.

Nothing in the Hanson opinion abrogates the rules quoted from Bartels v. Cair-Dem, Inc. As the opinion points out, constructive notice to defendant was not there in issue; it had actual notice of the condition created by its own activity. The Hanson case is analyzed in Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 1105–1107, 147 N.W.2d 211, 214–216, and Smith v. J. C. Penney Co., 260 Iowa 573, 149 N.W.2d 794, 801.

65 C.J.S. Negligence (1966 vol.) §§ 63(54), pages 771–775; 81(1), pages 978–979; and 81(7), page 997, states the applicable rules substantially as we have and cites a large number of supporting authorities for them.

Decisions from other jurisdictions which support the views we have expressed, supra, include Parks v. Montgomery Ward & Co., 10 Cir. Kan., 198 F.2d 772, 775 and citations; Hein v. Mills Bldg. Co., 190 Kan. 198, 372 P.2d 994, 996; Jeffries v. Safeway Stores, Inc., 176 Neb. 347, 125 N.W.2d 914, 917 and citations; Dawson v. Carolina Power & Light Co., 265 N.C. 691, 144 S.E.2d 831, 834–835; Safeway Stores, Inc., v. Criner, Okl., 380 P.2d 712, 715–716.

We note plaintiff's petition, in apparent recognition of what he was required to prove, alleges: "Defendant knew of the slippery condition of the floor, or in the exercise of reasonable care and diligence, should have noticed its slippery condition." Plaintiff having so alleged we are justified in requiring proof thereof. Christianson v. Kramer, 257 Iowa 974, 980–983, 135 N.W. 2d 644, 649 and citations.

■ IV. There is no evidence defendant had actual knowledge water had accumulated at the place where plaintiff fell. There is no direct evidence as to the length of time the claimed accumulation of water existed before plaintiff fell. No witness claimed to have seen any water where the accident occurred until after

plaintiff, who had just come inside out of the blizzard, fell. The burden rested on him to prove by a preponderance of the evidence the slippery condition existed for such time defendant, in the exercise of reasonable care, should have known of it. See Rule 344(f), par. 5, R.C.P.; Kramer v. F. W. Woolworth Co., supra, 255 Iowa 633, 636–637, 123 N.W.2d 572, 574.

See also Anno. 62 A.L.R.2d 6, 33–34, where a footnote to the rule stated substantially as we have just done, asserts "Not one of the cases dealt with herein contains any statement which is in any way inconsistent with this rule." To like effect is Anno. 62 A.L.R.2d 131, 138.

■ We must hold there is no substantial evidence the alleged slippery condition which caused plaintiff's fall existed for such time any of defendant's employees, in the exercise of reasonable care, should have known of it prior to the occurrence. In the absence of such evidence there is insufficient showing defendant's alleged negligence was the cause of plaintiff's fall.

In these Iowa cases, cited supra, recovery was denied although the evidence for plaintiff appears to have been stronger than it is here: Parsons v. H. L. Green Co., 233 Iowa 648, 652, 10 N.W.2d 40, 42; Schafer v. Hotel Martin Co., 249 Iowa 866, 869–872, 89 N.W.2d 373, 375–376; Vollmar v. J. C. Penney Co., 251 Iowa 1026, 1030–1031, 103 N.W.2d 715, 717–718; Kramer v. F. W. Woolworth Co., 255 Iowa 633, 636–638, 123 N.W.2d 572, 574–575. The claimed dangerous conditions in the Vollmar and Kramer cases, however, were not water or wet spots.

■ V. We have considered the few out-of-state decisions plaintiff cites. As the annotations in 61 and 62 A.L.R.2d, supra, indicate, all recognize that proof of actual or constructive notice of such a condition as claimed to exist here is requisite to liability of the occupant of the premises

for injury to an invitee. Factual differences in the cases plaintiff cites largely account for the decisions there reached. In denying liability for injury from a fall at a sidewalk stepdown near a hotel entrance, Chevraux v. Nahas, supra, Iowa, 150 N.W.2d 78, 80, observes: "It is axiomatic that in cases of this nature the facts peculiar to each are unavoidably controlling as to the matter of negligence."

Plaintiff argues the jury could find the lobby was not kept clean and dry, or "spic and span," at the time plaintiff fell, as defendant's manager had instructed the porters to keep it and this was a violation of the standard of care defendant set for itself. Defendant was required to use only the standard of care the law requires from it—ordinary or reasonable care under the circumstances. "One who, out of a considerate regard for the safety of others, customarily exercises a higher degree of care than the law requires should not, however, be penalized for failure to use this higher degree of care on a particular occasion." 65 C.J.S. Negligence (1966 vol.) § 16b, page 602.

VI. There is another consideration defendant argues which supports our holding it was entitled to a directed verdict on the ground evidence of its claimed negligence was insufficient. Parsons v. H. L. Green Co., supra, 233 Iowa 648, 651, 10 N.W.2d 40, 42, holds: "We cannot say that a failure to follow and remove immediately every deposit of snow that is brought into a building can reasonably be held to be a breach of duty which the inviter owes to an invitee and so constitutes negligence. Such is not the holding of the courts where this question has arisen. To so require would demand an exercise of such extraordinary care as to be unreasonable." A number of cases are cited in support of the holding, including S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132.

The statement quoted from the Parsons opinion is repeated with approval in Reuter v. Iowa Trust & Savings Bank, 244 Iowa 939, 943, 57 N.W.2d 225, 227. See also Anno. 62 A.L.R.2d 6, 141. Decisions to like effect include Wallace v. J. C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876, 879–880, citing Parsons v. H. L. Green Co. and many other precedents, including Bersch v. Holton Street State Bank, 247 Wis. 261, 19 N.W.2d 175. See also Jeffries v. Safeway Stores, supra, 176 Neb. 347, 125 N.W.2d 914, 917, and citations.

65 C.J.S. Negligence (1966 vol.) § 81(9), page 1001, cites the Parsons, Wallace, Kresge, Jeffries and Bersch cases, all supra, and others for this: "So, the fact that water, slush, and mud are tracked in on the floor of premises because of weather conditions outside ordinarily does not create an actionable situation, although the floor is thereby rendered wet, dirty, and slippery, except, perhaps, in some circumstances, as where there is a structural defect in the premises, or an inherently dangerous condition, or where the person responsible for the condition of the premises failed to use due care to remedy unreasonably dangerous conditions after actual or constructive notice thereof."

The quotation, supra, from Parsons v. H. L. Green Co. is directly applicable here. So far as shown, if the condition plaintiff complains of was not caused by moisture from his own shoes or clothing, it may well have come from those of someone who entered the lobby within a very few minutes prior to plaintiff's fall.

Defendant's second assignment of error need not be considered.

The judgment is

Reversed.

All Justices concur except BECKER, J., who dissents.