**Norma WEIDENHAFT and Dale Weidenhaft, Appellants,**

**v.**

**SHOPPERS FAIR OF DES MOINES, INC., Appellee.**

**No. 52962.**

Supreme Court of Iowa.

March 11, 1969.

Killmar & Reynoldson, Osceola, for appellants.

Clyde Putnam, Jr., Des Moines, for appellee.

STUART, Justice.

This is the latest in the long line of cases in which an invitee seeks to recover damages from the possessor of real estate for personal injuries sustained in a fall allegedly caused by a defective condition on the premises. The jury returned a verdict for defendant. Plaintiffs appealed from the judgment rendered thereon. Defendant seeks to uphold the trial court by claiming its motion for directed verdict should have been sustained. It may do so without appealing. Atherton v. Hoenig's Grocery, 249 Iowa 50, 52, 86 N.W.2d 252, 253. As we believe this proposition to be determinitive, we shall dispose of the appeal on this contention. Henceforth, we will refer to Mrs. Weidenhaft as if she were sole plaintiff.

In considering the propriety of a motion for directed verdict we view the evidence in the light most favorable to the party against whom the motion is made. R.C.P. 344(f), par. 2.

On January 16, 1965, plaintiff, Norma Weidenhaft, accompanied by her husband and two of her children, drove from their farm home near Osceola to Des Moines. At approximately 2:30 p.m., they arrived at Shoppers' Fair, parked in the north parking lot and entered the east entrance to the store where they intended to shop.

The parking lot was covered with packed snow as a result of 3.3 inches of snowfall January 14 and 15. There had been no precipitation Saturday, January 16. The weather was cold but there was heavy traffic in and about Shoppers' Fair.

Plaintiff and her family walked into the store through an outer door into an entrance way with corrugated rubber mats on the floor. The mats extended through an inner door into the store proper. The arrangement of Shoppers' Fair is typical for a self-service department store. There are many large signs suspended from the ceil-

ing to direct the customers to the various departments within the store. Plaintiff testified: "When I came in the door of the store and was coming in the entranceway I observed dirty water all around on the floor. I couldn't see on the other end of the mat, or wasn't paying attention to the far end of the mat at that time, but in that center piece and over around the sides of those, it was muddy water, a mess. It covered quite a space. It was all around in between those mats."

On cross-examination plaintiff continued: "As I got into the store there were rubber mats in the entranceway for both doors. I was not wearing galoshes. When I went into the store I went onto these rubber mats that were in the store. I stomped my feet on the rubber mat. I had walked quite a ways from the parked car to the store. There was some snow on the bottom of my shoes, but it was pounded down. There was enough traffic in the parking lot that the snow was mashed down. * * *

"I didn't lift up my feet to look at my shoes after I stomped them. My shoes were sponge rubber soles. I didn't look at the bottom of them. It's possible that there still could have been snow on my feet after I stomped my feet. When I was on the mat stomping my feet I could see water on the floor between the mats off of the mat on the floor itself. I could see the water around there was dark. While I was on the mats I did observe the water on the floor in the area of the mat. There was nothing else on the floor that I observed except the water and some slush, that was all."

Proceeding south on the mat toward the stocked area, plaintiff was looking to see where one daughter had gone and where she wanted to go when she stepped off the mat onto the asphalt tile floor and fell.

"I stepped off the mat with my right foot, because the left one is the one I fell on. I came down very hard. * * * There were no railings or anything that I

could grab ahold of when I fell. I saw no signs in this area relative to the condition of the floors. * * * After the fall I observed mud and water, and some slush on the floor."

On redirect examination, plaintiff stated she did not see any slush on the floor of the store before she fell.

The assistant manager of Shoppers' Fair at the time of plaintiff's fall, came to Mrs. Weidenhaft's aid while she was still in a sitting position where she fell. He stated it was the custom of the store to mop up the standing water which had resulted from customers tracking in snow every hour or two. There were no drains near the entrance to carry the water away. There was no evidence as to the last time prior to plaintiff's fall the entranceway had been mopped. He testified stock boys "would do that on occasion without my having to call them. I didn't keep records on who it was, or the time that they came to do this. This was customary by reason of people tracking in snow and water. It was pretty warm in the store and if there was slush, and with that heater above there it wouldn't be slush very long. It would be water primarily. This was a dirty kind of appearing water from people's shoes."

There was floor wax applied to the asphalt tile floor approximately three times a week. Plaintiff's husband and daughter testified the floor was "slippery" in the area of the fall. An employee at defendant's courtesy counter on January 16, 1965, testified: "To my knowledge, no one else fell in the area on that day before or after Mrs. Weidenhaft did during the period of time that I was handling the courtesy counter."

■ We must keep in mind the ultimate question is whether defendant as possessor of the real estate exercised reasonable care to make the premises reasonably safe for plaintiff's entry or for her use for the purpose of the invitation. Chevraux v. Nahas, 260 Iowa 817, 150 N.W.2d 78, 80; Meader v.

Paetz Grocery Co., Inc., 259 Iowa 1101, 1103–1104, 147 N.W.2d 211, 214; Hanson v. Town and Country Shopping Center, Inc., 259 Iowa 542, 544, 547, 144 N.W.2d 870, 872, 874. In an effort to more explicitly define defendant's duty we have, since Hanson v. Town. and Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870, consistently relied on sections 343 and 343A, Restatement (Second), Torts, as we interpret them.

■ "[W]e must determine whether under all the facts and circumstances there is sufficient evidence defendant, in the exercise of reasonable care to make the premises reasonably safe for plaintiff-invitee, should have expected that despite the obviousness of the condition of the strip involved, plaintiff would not realize the hazard and would fail to protect herself against it.

■ "While ordinarily a possessor of real estate would not be liable (or would not reasonably anticipate an unreasonable risk of harm to an invitee from an open or obvious defect), negligence may exist even though a defect is, in fact, open and obvious where the circumstances are such that there is reason to believe it would not be discovered or become obvious to the invitee or the risk of harm involved would not be anticipated or appreciated by the invitee. In such circumstances there may be generated a jury question as to whether the premises are reasonably safe." 259 Iowa at 549, 144 N.W.2d at 875.

■ Subsequent cases have restated this principle in various ways. The only amplification has been to make clear the possessor, in judging whether the invitee would realize the hazard and fail to protect herself against it or would not appreciate the risk of harm, is entitled to assume the invitee will exercise the care of an ordinary reasonable prudent person. Chevraux v. Nahas, 260 Iowa 817, 150 N.W.2d 78, 81–82;

Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 1106, 147 N.W.2d 211, 215–216.

In many recent cases we have attempted to draw the illusive line between facts and circumstances which create a jury question and those which do not, under the principles of law stated above. Ling v. Hosts Incorporated, Iowa, 164 N.W.2d 123; Adams v. R. S. Bacon Veneer Co., Iowa, 162 N.W.2d 470, 472–473; Bradt v. Grell Construction, Inc., Iowa, 161 N.W.2d 336, 347; Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279, 282; Chevraux v. Nahas, 260 Iowa 817, 150 N.W.2d 78, 81; Smith v. J. C. Penney Company, 260 Iowa 573, 149 N.W.2d 794, 801–802; Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 147 N.W.2d 211; Hanson v. Town and Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870.

The cases require the possessor of the real estate to have actual or constructive knowledge either of the defective condition or the hazard created by an obvious condition. Ling v. Hosts Incorporated, Iowa, 164 N.W.2d 123, filed January 14, 1969; Bartels v. Cair-Dem, Incorporated, 255 Iowa 834, 840–841; 124 N.W.2d 514, 518. Where, as here, plaintiff has actual knowledge of the condition, the possessor would be liable if he as a reasonable prudent person knows or should know the condition creates an unreasonable risk of harm which the invitee using the care of a reasonable prudent person would fail to appreciate or guard against.

■ The question is then, was there an unreasonable risk of harm created by the tracked-in snow which the possessor should have anticipated the invitee would fail to appreciate and guard against. The record is silent on any risk beyond that created by an asphalt tile floor made wet, dirty and slippery by tracked-in snow and water. There is no evidence of an unusual accumulation of water, mud and slush. There is no evidence this floor became more slippery when wet than the normal floor.

From all that appears in the record, the invitee should have been as aware of the risk created by the wet floor as the possessor of the real estate. The invitee was faced with a situation which a reasonable prudent person would expect to encounter when embarking on a shopping journey under existing weather conditions. The possessor of real estate would be entitled to assume an invitee who saw the condition of the floor would appreciate the risk involved and conduct herself accordingly.

We find support for this view in comment (e) following Restatement (Second), Torts § 343A, in which it is stated:

"In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."

See also Meader v. Paetz Grocery Co., Inc., 259 Iowa 1101, 1109, 147 N.W.2d 211, 217; Chevraux v. Nahas, Iowa, 150 N.W. 2d 78, 81–82; Wilburn v. Southwestern Bell Telephone Co., Mo.App., 382 S.W.2d 49, 53.

"In cases in which recovery has been sought for injuries sustained in a fall on a floor located within business premises, and allegedly made slippery by water, oil, mud, snow, etc., the courts have frequently stated or recognized that proof of the occurrence of the fall is not evidence of, and gives rise to no presumption or inference of, negligence on the part of the proprietor." Annot., 62 A.L.R.2d 6, 55.

Plaintiff points to certain other evidence which she claims establishes defendant should have anticipated she might fail to appreciate the risk of walking on the wet floor and fail to protect herself from that hazard. She claims she was distracted by the large signs directing the customers to the various departments. We need not decide whether the evidence was sufficient to support that claim or whether such signs fit within the category of distracting displays, because this line of cases relates to the discovery of the condition or hazard, not the acceptance of the risk of walking over the floor in its known condition or the failure to protect herself from the known hazard. Forsberg v. M. L. Parker Co., 258 Iowa 513, 519, 139 N.W.2d 315, 319; Bartels v. Cair-Dem, Incorporated, 255 Iowa 834, 843–844, 124 N.W.2d 514, 519–520; Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 1175, 110 N.W.2d 246, 249; Warner v. Hansen, 251 Iowa 685, 690–692, 102 N. W.2d 140, 143–145. There is no evidence she forgot the condition in the brief time between its discovery and her fall which is a factor to be considered in the proper case. Restatement (Second) Torts § 343A, comment (f).

She also claims as an invitee could not enter the store without crossing the wet floor around the mats, the defendant should have anticipated possible harm to invitees because as a reasonable man he had "reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk". Restatement (Second) Torts § 343A, comment (f).

When this comment is viewed in light of comment (e) quoted above, the Restatement's position appears to be that if the only path provided by the possessor of real estate is so inherently dangerous he should

anticipate, notwithstanding the obviousness of the condition, a risk of harm to an invitee attempting to use such path with due care, he must, in the exercise of reasonable care for the safety of his invitees take further steps to protect them from such risk and cannot rely on the inherently dangerous condition to turn them back. If, on the other hand, the risk is such that a reasonable man would not anticipate it would present an unreasonable hazard to an invitee traversing the known condition using due care, it is not necessary for the possessor to take further steps in order to discharge his duty to the invitee.

■ The record here shows only the wet, dirty floor normally encountered in Iowa under these weather conditions. We do not believe the possessor would as a reasonable prudent person anticipate the condition would present an unreasonable risk to a person using due care. Precautions taken here were sufficient to discharge his duty to exercise due care for plaintiff's safety.

Plaintiff claims she did not see slush on the wet floor until after she fell, and defendant should have anticipated she might not see the slush and protect herself from its danger. Although the record is not clear in this respect, we will assume it supports plaintiff's claim. We believe this fact is unimportant here. Plaintiff knew the wet· floor was caused by tracked-in snow. She had stamped her feet as she came in. As a reasonable prudent person she should have expected there might be slush on the floor and governed herself accordingly.

There is no proof in the record the condition which faced plaintiff here contained an unreasonable hazard which possessor should have anticipated she as an ordinary reasonable prudent person would fail to appreciate. The condition complained of here was a temporary one caused by weather conditions.

We anticipated the result reached herein in Ling v. Hosts Incorporated, 1969, Iowa, 164 N.W.2d 123, which was decided on the question of notice but in which we said:

"There is another consideration defendant argues which supports our holding it was entitled to a directed verdict on the ground evidence of its claimed negligence was insufficient. Parsons v. H. L. Green Co., supra, 233 Iowa 648, 651, 10 N.W.2d 40, 42, holds: 'We cannot say that a failure to follow and remove immediately every deposit of snow that is brought into a building can reasonably be held to be a breach of duty which the inviter owes to an invitee and so constitutes negligence. Such is not the holding of the courts where this question has arisen. To so require would demand an exercise of such extraordinary care as to be unreasonable.' A number of cases are cited in support of the holding, including S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132.

"The statement quoted from the Parsons opinion is repeated with approval in Reuter v. Iowa Trust & Savings Bank, 244 Iowa 939, 943, 57 N.W.2d 225, 227. See also Anno. 62 A.L.R.2d 6, 141. Decisions to like effect include Wallace v. J. C. Penney Co., Inc., 236 Miss. 367, 109 So.2d 876, 879–880, citing Parsons v. H. L. Green Co. and many other precedents, including Bersch v. Holton Street State Bank, 247 Wis. 261, 19 N.W.2d 175. See also Jeffries v. Safeway Stores, supra, 176 Neb. 347, 125 N.W.2d 914, 917, and citations.

"65 C.J.S. ˙Negligence (1966 vol.) § 81(9), page 1001, cites the Parsons, Wallace, Kresge, Jeffries and Bersch cases, all supra, and others for this: 'So, the fact that water, slush, and mud are tracked in on the floor of premises because of weather conditions outside ordinarily does not create an actionable situation, although the floor is thereby rendered wet, dirty and slippery, except, perhaps, in some circumstances, as where there is a structural de-

fect in the premises, or an inherently dangerous condition, or where the person responsible for the condition of the premises failed to use due care to remedy unreasonably dangerous conditions after actual or constructive notice thereof.' "

There are many similar cases. The results have varied according to the jurisdiction involved and the particular circumstances. Annot., 62 A.L.R.2d 6.

Our position is well expressed in Curtis v. Traders National Bank, 314 Ky. 765, 237 S.W.2d 76, 77. There plaintiff was caused to fall by the wet, slippery, marble floor in the vestibule of the bank where water had been tracked and blown in when the door was opened, which condition she observed. The court said: "Negligence in the maintenance of premises, like in all other cases, is to be measured by the danger to be apprehended by persons of average intelligence who are exercising ordinary care and prudence for their own safety. Accepting the predicate that the bank was chargeable with knowledge that water on the floor made it slippery, since that is known to everybody, yet we must likewise accept the proposition that it is a common, usual and proper arrangement and that it is not foreseeable that a patron, coming into the vestibule during a shower of rain, will not also take cognizance of the slippery condition."

Similar language is found in Conaway v. McCrory Stores Corp., 82 Ga.App. 97, 60 S.E.2d 631, 634; Clark v. Carson Pirie Scott & Co., 340 Ill.App. 260, 91 N.E.2d 452, 454–455; Wilburn v. Southwestern Bell Telephone Co., Mo.App., 382 S.W.2d 49, 54–55.

Other cases in which plaintiffs have been denied recovery for injuries sustained in falls on floors made slippery by tracked-in snow and rain are: Gulas v. Ratliff, 283 Ala. 299, 216 So.2d 278; Gibson v. Consolidated Credit Corp., 110 Ga. App. 170, 138 S.E.2d 77; Hartman v. Goldblatt Bros., Inc., 19 Ill.App.2d 563, 154

N.E.2d 872; Dawson v. Carolina Power & Light Co., 265 N.C. 691, 144 S.E.2d 831; Gill v. Meier & Frank Company, 208 Or. 536, 303 P.2d 211; Cowden v. Earley, 214 Or. 384, 327 P.2d 1109; Bersch v. Holton Street State Bank, 247 Wis. 261, 19 N.W. 2d 175. But see Shiflett v. M. Timberlake, Incorporated, 205 Va. 406, 137 S.E.2d 908; Messina v. Rhodes Company, 67 Wash.2d 19, 406 P.2d 312.

As the trial court should have sustained defendant's motion for a directed verdict, any error in the instructions to the jury would not be prejudicial to plaintiff and the case is therefore affirmed.

Affirmed.

All Justices concur, except BECKER, J., who dissents.